Alan McSURELY et al., Appellants

v.

John L. McCLELLAN, Chairman, et al.

No. 23845.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1970.

Decided March 26, 1970.

Mr. Morton Stavis, Newark, N. J., with whom Messrs. Philip J. Hirschkop, Alexandria, Va., and William M. Kunstler, New York City, were on the motion, for appellants.

Mr. Irwin Goldbloom, Washington, D. C., with whom Mr. Morton Hollander, Washington, D. C., was on the opposition to the motion, for appellees.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

BAZELON, Chief Judge:

Appellants here are Alan and Margaret McSurely and four organizations.[1] The McSurelys, interposing several claims under the First and Fourth Amendments, refused in March of 1969 to comply with a subpoena *duces tecum* issued by a Senate subcommittee [2] which demanded the production of documents relating to membership in, and activities of, several organizations including those parties here.[3] The day on which production was required—March 4, 1969 [4]

1. The Southern Conference Educational Fund, the Southern Student Organizing Committee, the Student Nonviolent Coordinating Committee, and Students for a Democratic Society.

2. The Permanent Subcommittee on Investigations of the Committee on Government Operations, United States Senate.

3. The subpoena demanded the production of

all books, records, correspondence, documents, and other papers which are in the possession and control of Alan McSurely or Margaret McSurely or their agents and which relate to or pertain to:

(1) Meetings, from April 5 through April 8, 1967, attended by Alan McSurely and Margaret McSurely as individuals or as members or employees of Southern Conference Educational Fund or the Southern Students Organizing Committee held at Nashville, Tennessee, with members of or employees of the Student Non-Violent Coordinating Committee and/or Stokely Carmichael, prior to the civil disturbances (riots) which occurred in Nashville, Tennessee, on or about April 8, 1967;

(2) All books, records, correspondence, documents, and other papers which relate to or are concerned with present or former membership in or employment by the Student Non-Violent Coordinating Committee for the period January 1, 1964, to date;

(3) All books, records, correspondence, documents, and other papers which relate to or are concerned with the membership in or employment by the Southern Conference Educational Fund of Alan McSurely and/or Margaret McSurely;

(4) All books, records, correspondence, documents, and other papers which relate to or are concerned with membership in and the activities of Students for a Democratic Society and/or Southern Students Organizing Committee, for the period January 1, 1964, to date;

(5) All books, records, correspondence, documents, and other papers which relate to or are concerned with membership in or employment by the National Conference for New Politics and Vietnam Summer, of Alan McSurely and/or Margaret McSurely for the period January 1, 1964, to date;

(6) All books, records, correspondence, documents, and other papers which relate to or are concerned with Alan McSurely's employment by Appalachian Volunteers;

(7) All books, records, correspondence, documents, and other papers which relate to or are concerned with the employment of Alan McSurely and/or Margaret McSurely by the United Planning Organization (UPO) in Washington, D. C., for the period January 1, 1964, to date.

4. The McSurelys appeared before the subcommittee on March 4 and requested that the hearing be adjourned and the subpoenas vacated pending judicial determination of the legality of the subpoenas.

—appellants filed suit in the District Court, naming as defendants the members of the subcommittee and the subcommittee's chief counsel and general counsel. They sought a declaration that compliance with the subpoena was not required; a preliminary and permanent injunction to restrain the institution of criminal proceedings against the McSurelys for failure to comply with the subpoena; and damages.[5]

No further action was taken in this suit for some time.[6] Meanwhile, pursuant to a Senate resolution,[7] the McSurelys were indicted on August 20 for contempt of Congress.[8] They were arraigned on September 5. On September 18, appellants in the civil case served notice of intent to take depositions of Jerome Adlerman, general counsel to the subcommittee, and one John Brick, an employee of the subcommittee. One week later, the McSurelys filed pretrial motions in the criminal case seeking, *inter alia*, pretrial discovery by depositions and otherwise. Shortly thereafter, appellees filed in the civil case a motion to stay all proceedings pending completion of the criminal cases. A temporary stay of the civil proceedings was granted on October 7.

The motions in the criminal cases came on for hearing on November 24, at which time the District Court denied the bulk of the McSurelys' motion for discovery,[9] and their motions to dismiss the indictments. An oral motion to stay the criminal proceedings pending disposition of the civil case was likewise denied, and the trials set for January 19, 1970.[10] On December 10, the motions in the civil case were heard; and on December 18, the District Court entered an order staying all proceedings, including the taking of depositions and other discovery, until thirty days after the completion of "all appellate remedies" in the criminal cases; and denying appellants' motion to stay the criminal cases until resolution of the civil proceedings. Appellants seek relief from this order.

I.

■ We need not pause long over the Government's contention that we have no jurisdiction to entertain an appeal from the District Court's order simultaneously denying a stay of the criminal proceedings and staying the civil proceedings until the criminal cases are concluded. With an exception not here relevant,[11] we have jurisdiction over appeals from "all final decisions" of the District Court.[12] The Supreme Court has adopted "essentially practical tests for identifying those judgments which are, and those which are not, to be considered 'final.' [Citations] A pragmatic approach to the question of finality has been considered essential to the

This request was denied, and the McSurelys were ordered to produce the documents by noon of March 7, 1969.

5. No request was made to obtain a temporary restraining order.

6. It appears from the docket entries of the District Court that defendant John L. McClellan filed an answer to the complaint on May 19, and that defendants McClellan, Edmund S. Muskie, Karl E. Mundt, and Jerome Adlerman filed an answer to the complaint on July 22. Defendants Henry M. Jackson, Sam J. Ervin, Jr., Abraham Ribicoff, Robert P. Griffin, Charles A. Percy, Jacob Javits, and Donald F. O'Donnell appear never to have answered the complaint. The next entry, dated October 2, 1969, records a motion to stay the criminal proceedings.

7. S.Res. No. 191, 91st Cong., 1st Sess. *See* 115 Cong.Rec. 4499–4500 (daily ed. May 1, 1969); *id.* at 4528 (daily ed. May 5, 1969).

8. 2 U.S.C. § 192 (1964).

9. It appears that some discovery of the grand jury minutes was allowed, and all other discovery denied.

10. On January 16, 1970, we stayed the criminal proceedings pending our disposition of this appeal. 28 U.S.C. § 1651 (a) (1964). Judge Tamm dissented.

11. We have no jurisdiction when a direct appeal lies to the Supreme Court. 28 U.S.C. § 1291 (1964).

12. 28 U.S.C. § 1291 (1964).

achievement of the 'just, speedy, and inexpensive determination of every action': the touchstones of federal procedure." Brown Shoe Co. v. United States, 370 U.S. 294, 306, 82 S.Ct. 1502, 1513, 8 L.Ed.2d 510 (1962).[13] "[T]he concept of finality as a condition of review has encountered situations which make it clear that it need not invite self-defeating judicial construction." DiBella v. United States, 369 U.S. 121, 125, 82 S.Ct. 654, 657, 7 L.Ed.2d 614 (1962).

The order of the District Court in this case had "sufficient indicia of finality"[14] to render it appealable as a final decision. At the core of appellants' complaint is the claim that their rights will be irretrievably lost if the McSurelys are forced to trial on the criminal charges, regardless of the outcome. If the claim of a right to be free from prosecution is not determined before the criminal trials take place, it will be for all practical purposes lost.[15] Consequently, the order of the District Court amounted to a final determination of this claim, and we may therefore hear the appeal.[16] Our conclusion that the order involved is appealable in view of the nature of appellants' claims is not undercut by the fact that we do not adopt such of their contentions as we find open in the present posture of the case. Appellants present the claim that

they will be subject to constitutional injury no matter what the course of events in the criminal proceeding. We have jurisdiction to consider that claim, even though we conclude, as will appear, that the criminal proceeding can be conducted so as to avoid trampling on appellants' constitutional rights.

In view of this disposition, we need not consider whether the order is appealable as the denial of a preliminary injunction, or whether relief might be available under the All-Writs Act.[17]

## II.

In addition to claims regarding the construction and validity of the Senate resolutions authorizing the subcommittee's investigation,[18] appellants raise in substance four claims, any one of which, they argue, would justify the McSurely's failure to comply with the subpoena. First, that the documents in issue were originally taken from their possession in an unlawful search and seizure by agents of the State of Kentucky;[19] that the information upon which the present subpoenas are based stems from an examination of the illegally seized documents by a staff member of the Senate subcommittee after the seizure had been declared unconstitutional; and that, therefore, the subpoena is unlawful.[20] Second, that the documents relate to membership and political activity pro-

---

13. Citations and footnote omitted.

14. Brown Shoe Co. v. United States, 370 U.S. 294, 308, 82 S.Ct. 1502 (1962).

15. We are not suggesting, of course, that this claim may not be raised as a defense to the criminal prosecutions. See note 35 infra and accompanying text. Such a defense, if successful, would vindicate the McSurelys' right to be free from conviction, but the greater right—to be free of prosecution—could not be made whole.

16. Woods v. Wright, 334 F.2d 369, 373–374 (5th Cir. 1964); United States v. Wood, 295 F.2d 772, 777–778 (5th Cir. 1961), cert. denied, 369 U.S. 850, 82 S.

Ct. 933, 8 L.Ed.2d 9 (1962); see Amdur v. Lizars, 372 F.2d 103, 105–106 (4th Cir. 1967).

17. 28 U.S.C. § 1651(a) (1964).

18. Appellants do not appear to assert that these claims may not adequately be raised in the course of criminal prosecutions.

19. See McSurely v. Ratliff, 398 F.2d 817 (6th Cir. 1968); McSurely v. Ratliff, 282 F.Supp. 848 (E.D.Ky.1967).

20. Elkins v. United States, 364 U.S. 206, 215, 221–223, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391–392, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

tected by the First Amendment,[21] and that consequently, absent justification not present in this case,[22] the subpoena infringes "[the] freedom to engage in association for the advancement of beliefs and ideas," N. A. A. C. P. v. Alabama ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 1171, 2 L.Ed.2d 1488 (1958).[23] Third, that the interplay of the First and Fourth Amendments [24] requires that, at least when production of documents is resisted on a colorable First Amendment basis,[25] judicial review of the legality of the subpoena must be available before criminal liability may attach to failure to comply.[26] Fourth, that whether or not such preenforcement judicial review is available to the individuals served with the subpoena, third parties whose rights may be irretrievably lost upon compliance are entitled to press their claims either prior to the time at which criminal liability will attach to the individuals served should they fail to comply with the subpoena,[27] or at the very least in a civil proceeding before the individuals served are prosecuted for contempt, lest the third parties' rights, necessarily entrusted in criminal proceedings to the persons subpoenaed, receive inadequate protection.

For present purposes, we may assume without deciding that one or more of these claims is valid. It nevertheless appears to us that, in the circumstances of the present case, the criminal trial should be allowed to proceed. Admittedly the third and fourth claims presented by appellants, if valid, would lead to the conclusion not only that the McSurelys may not be convicted for failure to comply with the subpoena, but also that prosecution itself is barred until the underlying issues have been determined. But we believe that so broad a claim is no longer open to appellants. Although the instant suit was filed on March 4, before compliance with the subpoena was required,[28] no attempt was made to obtain a temporary restraining order, and beyond the filing of the complaint appellants took no action whatsoever in the suit for almost seven months thereafter.[29] In the meantime, although the Senate, on May 5, resolved that the matter be referred to the United States Attorney for criminal prosecution,[30] appellants made no attempt to join him in the suit, or to otherwise restrain him from, e. g., presenting to the grand jury the fruit of an unlawful search.[31] Even after the indictment had been filed, and the McSurelys

21. *Cf.* Boorda v. Subversive Activities Control Board, 137 U.S.App.D.C. 207, 212, 421 F.2d 1142, (December 12, 1969).

22. *Cf.* Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 544–546, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963).

23. *See also* Watkins v. United States, 354 U.S. 178, 196–198, 77 S.Ct. 1173, 1 L.Ed. 2d 1273 (1957).

24. Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Stanford v. Texas, 379 U.S. 476, 484–486, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

25. *Cf.* A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 210, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) (plurality opinion); Marcus v. Search Warrants, 367 U.S. 717, 730–731, 81 S.Ct. 1708, 6 L. Ed.2d 1127 (1961); Kovacs v. Cooper, 336 U.S. 77, 88, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (plurality opinion).

26. *See* Speiser v. Randall, 357 U.S. 513, 525–526 (1958); *cf.* Carroll v. President and Commissioners, 393 U.S. 175, 89 S. Ct. 347, 21 L.Ed.2d 325 (1968).

27. *Compare* Cobbledick v. United States, 309 U.S. 323, 327–328, 60 S.Ct. 540, 84 L.Ed. 783 (1940) (witness's claims of valid resistance to process not reviewable until imposition of sanction) *with* Perlman v. United States, 247 U.S. 7, 12–13, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (third party's claim reviewable before time of compliance or noncompliance).

28. *See* note 4 *supra.*

29. *See* note 6 *supra.*

30. 115 Cong.Rec. 4528 (daily ed. May 5, 1969).

31. *See* Smith v. Katzenbach, 122 U.S.App. D.C. 113, 117–120, 351 F.2d 810, 814–817 (1965).

arraigned, appellants made no attempt to halt the criminal prosecutions for almost a month.[32] Having permitted the prosecutions to proceed so far unchallenged, appellants are in a weak position to complain of injury from the mere fact of prosecution. *Cf.* United States v. Munsingwear, Inc., 340 U.S. 36, 40, 41, 71 S.Ct. 104, 95 L.Ed. 36 (1950). Finally, with respect to the possibly separate claims of the appellant organizations, we note that there has never been any hint that the McSurelys will do other than vigorously defend the rights of the organizations and their members.

We therefore conclude that appellants' claim of a right to be free from criminal prosecution may not at this stage operate to stay the criminal proceedings.[33] Nevertheless, there remains appellants' separate claim that they will be unable adequately to present their constitutional defenses in the criminal proceedings. That claim would in itself constitute a defense to the criminal charges.[34] It may well be that such a claim, if provided with an adequate foundation, would present an equitable basis for pretrial restraint of the criminal prosecution.[35] That foundation, however, must be a firm one. We do not believe that appellants may prevail on a claim like this unless they can show, without the necessity of inquiry into the likely course of decision by the criminal court, that their contentions may not be adequately presented by way of defense in the criminal trials.[36] This is similar to the standard applied when state criminal cases are sought to be removed to the federal courts.[37] To this question we now turn.

### III.

It is clear that appellants' claims are cognizable in the criminal proceedings, and appellants do not suggest the contrary. Rather, they base their argument on the theory that, as at least one of their claims rests upon a factual foundation peculiarly within the knowledge of the subcommittee's members and staff,[38] the limited discovery procedures available in criminal cases [39] will not allow them adequate opportunity to develop the factual basis for their claim.

■■■■ We do not believe that the criminal process is so limited. Restrictions upon discovery in criminal cases are directed primarily to the timing, rather than the fact of discovery itself. While a criminal defendant may not be entitled to "discover" in advance of trial the contents of the government's case,

---

**32.** Their motion to stay proceedings in the criminal cases was filed on October 2, more than a month after the McSurelys' indictment on August 20, and almost a month after they were arraigned on September 5.

**33.** That is, insofar as appellants may have a legally cognizable right to be free of the disabilities of criminal prosecution other than conviction, we believe the time for equitable enforcement of the right has passed. We would be reluctant to apply the doctrine of laches were it not for the fact that, as appellants' constitutional claims may afford a defense to the criminal charges, they are barred only from obtaining equitable relief against the mere pendency of the criminal prosecutions.

**34.** Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

**35.** *See* Cooper v. Hutchinson, 184 F.2d 119, 123–125 (3rd Cir. 1950).

**36.** *Compare* Georgia v. Rachel, 384 U.S. 780, 797–806, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966).

**37.** With a qualification not here relevant, *viz.*, that the right be one "under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1) (1964).

**38.** Appellants claim that the knowledge upon which the subpoena was based was itself illicit. Obviously, the question what if any other information was available to the subcommittee is not a question susceptible of answer by the McSurelys.

**39.** *See* A. Amsterdam, B. Segal, & M. Miller, Trial Manual for the Defense of Criminal Cases §§ 265–273 (1967); 1 C. Wright, Federal Practice and Procedure §§ 241–259 (1969).

he is obviously entitled to disclosure at the time of trial of the facts bearing upon his guilt or innocence. The prosecution may not suppress evidence favorable to the accused, at least if request is made by defense counsel for its production.[40]

We need not decide, for present purposes, whether appellants' Fourth Amendment claim [41] is a matter going to guilt or innocence or one that relates to the admissibility of evidence, an issue that may properly be raised before trial.[42] In either event, the McSurelys are entitled to call the witnesses necessary to develop the factual basis for their claim, either in pretrial proceedings or at the trial.[43] At least when constitutional claims are involved, the kind of fairness basic to criminal trials entitles defendants to reasonable continuances in order to prepare for further examination of unfriendly witnesses not previously available for interview or discovery, if their testimony requires an opportunity for preparation not possible before trial.[44] The trial judge has flexibility to manage the trial to proceed expeditiously and avoid unnecessary delays, without sacrificing fairness.

█ We see no basis, therefore, for an assumption that appellants will not have an adequate opportunity to present and to develop the factual basis for, their constitutional claims, either during the criminal trials, or in further pretrial proceedings if the District Court, on re-flection, considers those appropriate in light of the problems involved.

## IV.

One final matter requires mention. Appellants here have sought relief not only from the denial of any stay of the criminal proceedings, but also from that portion of the District Court's order staying all proceedings, including the taking of depositions and other forms of discovery, in the civil action. The stay was to continue in effect until thirty days after final resolution, including the exhaustion of all appeals, of the criminal cases.

█ Of course the District Court has a broad discretion in granting or denying stays so as to "coördinate the business of the court efficiently and sensibly." [45] This discretion, however, may be abused "by a stay of indefinite duration in the absence of a pressing need." [46] Here the District Court has not advanced any reason for a stay of such potentially long duration, beyond the one implicit in the order—that some of the parties were involved in criminal proceedings raising some of the same issues. A "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." [47]

█ We are not prepared to say that the District Court's action here was unreasonable. Of course, civil discovery

40. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

41. *See* notes 19–20 *supra* and accompanying text.

42. The writer of this opinion would emphasize the important consequences that decision of this question will have with regard to the burden of proof and the burden of coming forward with evidence on the matter.

43. Washington v. Texas, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

44. *Cf.* Townsend v. Bomar, 351 F.2d 499, 501–502 (6th Cir. 1965); Roberts v.

United States, 325 F.2d 290, 292 (5th Cir. 1963).

45. Landis v. North American Co., 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L. Ed. 153 (1936).

46. *Id.*

47. *Id.* at 257, 57 S.Ct. at 167.
There is undoubted appellate jurisdiction to review the grant of an indefinite stay in a civil proceeding. *See, e. g.*, Government & Civic Employees Organizing Committee v. Windsor, 347 U.S. 901, 74 S.Ct. 429, 98 L.Ed. 1061 (1954), affirming 116 F.Supp. 354 (N.D.Ala.1953); *Landis, supra.*

may not be used to subvert limitations on discovery in criminal cases, either by the government [48] or by private parties.[49] But the facts underlying this litigation are already more than two years old. Although we may expect the criminal trials to be concluded with some dispatch, final resolution of the criminal cases, including the resolution of any appeals if the McSurelys are convicted, may require considerable time. In light of the fact that one of the functions of discovery is to preserve testimony while recollection is relatively fresh, an indefinite stay of their taking should not be entered unless no alternative is available. In the present case, we have no indication that the District Court considered the possibility of more narrowly framed protective orders—as, for example, to stay discovery procedures only until the taking of evidence is concluded in the criminal cases,[50] or to limit discovery concerning certain matters to written interrogatories to be held under seal pending completion of the criminal trial.[51] In the interests of justice, we vacate the order staying all proceedings in the civil action, and remand the case to the District Court for further consideration consistent with this opinion.

That portion of the order of the District Court denying a stay of the criminal trials is affirmed; that portion staying all proceedings in the civil action is vacated, and the matter remanded for further consideration consistent with this opinion.

So ordered.

TAMM, Circuit Judge (dissenting):

It appears to me that the majority opinion has passed over much too swiftly and much too lightly a very real jurisdictional problem in this case. The proposition that one can appeal to the Court of Appeals a discretionary action by a district judge refusing to stay a criminal prosecution while a civil case proceeds ought not to be too readily accepted by this court. Only those actions of the trial court which threaten that rights of the appellant will be *irreparably lost* should be granted the status of a final order appealable under 28 U.S.C. § 1291 (1964). Harris v. Gibson, 322 F.2d 780 (5th Cir. 1963), cert. denied, 376 U.S. 908, 84 S.Ct. 661, 11 L.Ed.2d 606 (1964); United States v. Wood, 295 F.2d 772 (5th Cir. 1961), cert. denied, 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962).

The majority relies on rather skimpy authority for its view that jurisdiction attaches in this case, citing DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), for the proposition that "the concept of finality as a condition of review has encountered situations which make it clear that it need not invite self-defeating judicial construction." (369 U.S. at 125, 82 S.Ct. at 657) While that is a worthy maxim, its use must be carefully circumscribed, and

---

48. United States v. Parrott, 248 F.Supp. 196, 199–202 (D.D.C.1965) (Gasch, J.).

49. Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962), cert. denied, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963).

50. Just as we have considered it inappropriate, for purposes of deciding whether equitable relief should be granted against the criminal prosecutions, to speculate about the possibility that the trial judge in the criminal case will err, the writer of this opinion would likewise state that in his view, no such speculation is permissible for the purpose of deciding whether civil discovery should be post-

poned. And of course, unless there is error the criminal cases will be disposed of by a single trial.

51. It is appropriate for the District Court to consider whether there may be means less drastic than complete denial of discovery (and the consequent perpetuation of testimony) in the civil case which will assure furtherance of justice in that case without undercutting the reasons underlying the limitation of discovery in the interrelated criminal case, *i. e.*, the possible need for precaution against perjury or intimidation of witnesses, and the principle of mutuality of discovery.

it should not be given self-serving judicial construction. In the *DiBella* case the Court reviewed the appealability of an order denying a pretrial motion to suppress evidence allegedly obtained through an illegal search and seizure. There the Court, even though it followed the expanded theory of finality implicit in the dictum cited by the majority here, nevertheless concluded that the denial of the motion to suppress *was not appealable* because interlocutory in nature. In amplifying the statement quoted by the majority, the Court noted that the exceptional situations which have been encountered have involved circumstances such as orders for the immediate transfer of property or appeal of an order collateral to the principal litigation which would not be affected by the decision on the merits and in which "the practical effect of the order will be irreparable by any subsequent appeal." (369 U.S. at 125–26, 82 S.Ct. at 657.)

I fail to see, although the majority sees clearly, the "sufficient indicia of finality" (p. 668 *supra*) which render this stay order reviewable, nor do I agree that if appellants' claim is not "determined before the criminal trials take place, it will be for all practical purposes lost."[1] I cannot agree that this is the kind of case in which to find a final order reviewable under section 1291.

---

1. Although the majority appears to base its finding of jurisdiction on the theory that substantial rights will be irreparably lost if not determined before the criminal trial takes place, such a criterion is refuted by the majority's disposition on the merits, through such diffuse statements as:

> We therefore conclude that appellants' claim of a right to be free from criminal prosecution may not at this stage operate to stay the criminal proceedings. (*Supra at* 670.)

> It is clear that appellants' claims are cognizable in the criminal proceedings, and appellants do not suggest the contrary. (*Supra at* 670.)

> [Appellants claim that] the limited discovery procedures available in criminal cases will not allow them adequate opportunity to develop the factual basis for their claim.

> We do not believe that the criminal process is so limited. (*Supra at* 670.)

> We see no basis, therefore, for an assumption that appellants will not have an adequate opportunity to present, and to develop the factual basis for, their constitutional claims * * *. (*Supra at* 671.)

Where, then, is the irreparable injury upon which the majority predicates jurisdiction?