# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 23, 2010               Decided June 18, 2010

No. 09-5328

OBAYDULLAH, DETAINEE, GUANTANAMO BAY AND SAMI AL
HAJJ, AS NEXT FRIEND OF OBAYDULLAH,
APPELLANTS

v.

BARACK OBAMA, PRESIDENT OF THE UNITED STATES AND
ROBERT M. GATES, SECRETARY OF DEFENSE OF THE UNITED
STATES OF AMERICA,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01173-RJL)

*Ranjana Natarajan* argued the cause for appellant
Obaydullah. With her on the briefs were *Kristine A. Huskey*,
*Anne Richardson*, *Dan Stormer*, and *Pardiss Kebriaei*.

*Robert M. Loeb*, Attorney, U.S. Department of Justice,
argued the cause for appellees. With him on the brief was
*Sydney Foster*, Attorney. *August E. Flentje*, Attorney, entered
an appearance.

Before: GINSBURG and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*:  In July 2008 the Appellant, known only as Obaydullah, petitioned the district court for a writ of habeas corpus, challenging the lawfulness of his detention at the Naval Station at Guantanamo Bay, Cuba.  In December the district court stayed Obaydullah's petition because military commission charges had been sworn against him.  Although no military commission proceeding had yet begun — indeed, still has not begun — the district court twice denied Obaydullah's motions to vacate the stay of his habeas petition.  Obaydullah appeals from the second of those denials.  Because we agree with Obaydullah that this prolonged delay in adjudicating his petition is inconsistent with the Supreme Court's teaching in *Boumediene v. Bush* that a detainee at Guantanamo Bay is "entitled to a prompt habeas corpus hearing," 128 S. Ct. 2229, 2275 (2008), we reverse the order of the district court and remand this matter for that court to proceed with Obaydullah's habeas corpus petition.

## I. Background

The Military Commissions Act of 2009, Pub. L. No. 111-84, tit. XVIII, 123 Stat. 2190, 2574–614, specifies the "procedures governing the use of military commissions to try alien unprivileged enemy belligerents for violations of the laws of war and other offenses triable by military commission."  10 U.S.C. § 948b(a).  The MCA, along with the Rules for Military Commissions promulgated by the Secretary of Defense to "govern the procedures and punishments in all trials by military commissions under [that

Act]," Rule 101(a), establish a two-step process for initiating a trial before a military commission. First, any person subject to the Uniform Code of Military Justice may swear a charge against a defendant. 10 U.S.C. § 948q; Rule 307. Second, the "convening authority" — either the Secretary of Defense or his designee — decides whether the charge should be dismissed or referred to a military commission for trial. 10 U.S.C. § 948h; Rules 401(b), 407, 601. There is no deadline for making this determination.[*]

Obaydullah has been detained at Guantanamo Bay since October 2002. He petitioned the district court for a writ of habeas corpus in July 2008, shortly after the Supreme Court determined the writ is available to detainees held at Guantanamo, *see Boumediene*, 128 S. Ct. at 2262. In September Obaydullah was charged with conspiracy to provide and providing material support for terrorism, both crimes triable before a military commission. The Government then filed a motion to dismiss without prejudice Obaydullah's habeas petition or, in the alternative, to hold the petition in abeyance pending completion of the military commission proceeding. Obaydullah opposed dismissal but consented to the court holding his petition in abeyance. The district court stayed the habeas petition in December 2008.

As of January 22, 2009 no convening authority had decided whether to refer the charges against Obaydullah to a military commission for trial. On that day the President issued Executive Order No. 13,492, in which he directed the Attorney General immediately to oversee a "review of the status of each individual currently detained at Guantanamo,"

---

[*] The version of Rule 401(b) in force at the time of the challenged order set no specific deadline for this decision but required that it be made "in a prompt manner"; the current version imposes no such requirement.

and to determine "whether ... to prosecute the detained individuals for any offenses they may have committed, including whether it is feasible to prosecute such individuals before a court established pursuant to Article III of the United States Constitution." §§ 4(a), (b), (c)(3), 74 Fed. Reg. 4897 at 4898–99. The President also directed the Secretary of Defense "to ensure that during the pendency of the Review described in ... this order, no charges are ... referred to a military commission." § 7, 74 Fed. Reg. at 4899.

Because referrals to military commissions were suspended pending the Attorney General's review, Obaydullah filed a motion to vacate the stay of his habeas petition, which motion the Government opposed. The district court denied the motion in April 2009 but required the Government by July to report on the status of Obaydullah's possible trial before a military commission. In that report the Government represented that some progress had been made in reviewing Obaydullah's detention pursuant to the Executive Order, but it did not say when the convening authority would decide whether to try Obaydullah before a military commission.

Shortly before the Government submitted the status report Obaydullah had filed a renewed motion to vacate the stay of his habeas petition and the Government had opposed the motion. After receiving the report the district court denied the motion without making any findings or giving any reason. It is this denial that Obaydullah now appeals.

In its brief on appeal the Government reports the review of Obaydullah's detention has been completed and the Attorney General "has determined that the petitioner's case is appropriate for prosecution and that a military commission is the appropriate venue for such prosecution." With this review

now completed, whether a military commission proceeding will be brought against Obaydullah again depends upon whether the convening authority refers the charges against him. The Government does not represent that such a referral has been made, by a time certain will be made, or is in any other way imminent.

## II. Analysis

Obaydullah argues the district court, in continuing the stay, erred as a matter of law and hence abused its discretion, *see Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law"), because the stay in the circumstances of this case is inconsistent with the decision in *Boumediene* that a detainee at Guantanamo Bay is "entitled to a prompt habeas corpus hearing." 128 S. Ct. at 2275. Before reaching the merits of Obaydullah's argument, we consider the Government's contention that this court does not have jurisdiction to review the order he is challenging.

## A. Appellate Jurisdiction

Under 28 U.S.C. § 1291, this court has jurisdiction to review an order of the district court only if that order constitutes a "final decision." The collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47 (1949), provides an order is final if it "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [will] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

The Government contests only the first element, arguing the order in this case does not "conclusively determine the

disputed question" because the district court is "monitoring the case" and at any time "may lift the stay" should it decide the military commission proceeding is "unlikely to begin in a timely fashion." Even a collateral order that is technically subject to modification, however, "conclusively determine[s] the disputed question [if] there is no basis to suppose that the District Judge contemplated any reconsideration of his decision." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12–13 (1983); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1103 (9th Cir. 2005) (holding a stay, although "theoretically" subject to modification, was a reviewable collateral order because "the district court did not impose a time limit on the stay or note circumstances that might result in its modification"); *In re Gen. Motors Corp.*, 594 F.2d 1106, 1118 (7th Cir. 1979) (collateral order doctrine "does not require that the trial court be without power to reverse its ruling; it only requires that no further consideration be likely").

The district court has twice summarily refused to lift the stay of Obaydullah's habeas petition. When the court did so the second time the Government had reported making some progress in its review of Obaydullah's detention but had not represented that there was a set time within which the convening authority would decide whether to refer the charges against Obaydullah to a military commission. Because the district court's maintenance of the stay in these circumstances provides us "no basis to suppose [it] contemplated any reconsideration of [its] decision," we have jurisdiction under § 1291 to hear this appeal.

B. The Merits

The district court gave no reason for denying Obaydullah's motion to vacate the stay of his habeas petition,

so we shall assume it did so for the reasons advanced at that time by the Government. *See Indianapolis Life Ins. Co. v. Herman*, 516 F.3d 5, 9 (1st Cir. 2008). Finding these reasons inadequate, we are constrained to remand this matter to the district court.

The Government's main argument was that the district court should abstain from hearing Obaydullah's habeas petition pursuant to *Schlesinger v. Councilman*, in which the Supreme Court held a federal court should generally abstain from intervening in an ongoing court-martial proceeding against a member of the Armed Forces. 420 U.S. 738, 756–58 (1975). As epitomized in *Hamdan v. Rumsfeld*, the Court in *Councilman* based its decision upon "two considerations of comity that together favor abstention":

> First, military discipline and, therefore, the efficient operation of the Armed Forces are best served if the military justice system acts without regular interference from civilian courts. Second, federal courts should respect the balance that Congress struck between military preparedness and fairness to individual service members when it created an integrated system of military courts.

548 U.S. 557, 586 (2006) (internal citation and quotation marks deleted).

The situation in *Councilman* was, of course, quite different from the one here — the ongoing trial of a member of the Armed Forces before a court-martial as opposed to the possible future trial of an alien detainee before a military commission. Nonetheless, the Government contends the principles of *Councilman* apply here for two reasons: Although military discipline is not implicated, the enforcement of the laws of war is "surely as exigent as

maintaining discipline in the Nation's own troops"; and "the dictates of comity owed to the Congressionally mandated military commissions" require abstention in order to avoid duplicative proceedings and potentially inconsistent judgments.

We need not decide in this case whether abstention under *Councilman* is appropriate in order to avoid duplication of or conflict with a proceeding before a military commission because abstention is surely not appropriate where, as here, there is no military commission, let alone an ongoing proceeding; when the district court stayed Obaydullah's habeas petition and even now a trial before a military commission is only a possibility and only at some unspecified time in the future. As the Government concedes, "[a] detainee's habeas case should not be stayed ... where military commission proceedings are not expected to commence in an appropriately timely fashion." Therefore, we need hold only that, whatever the point at which a proceeding before a military commission can be considered pending for purposes of abstention, it has not been reached here, where charges against Obaydullah have not been referred and the Government has provided us with no reason to believe such a referral is imminent.[*]

Our confidence that the Supreme Court's concerns in *Councilman* do not carry over to the present context is increased by that Court's similar holding with respect to the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).

---

[*] The Government effectively concedes that no military commission proceeding has or can be said to have begun: in its brief it notes the district court's stay was entered "in anticipation of military commission proceedings," contrasting the circumstances here with those in other cases where "military commission proceedings were active" when the stay was issued.

In *Younger* the Court held a federal court should not entertain an application to stay a criminal proceeding in state court, except in extraordinary circumstances not relevant here. *Id.* at 43–45. In *Steffel v. Thompson*, however, the Court made clear that *Younger* abstention is not called for when a state prosecution is merely anticipated.

> When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in duplicative legal proceedings or disruption of the state criminal justice system; nor can federal intervention, in that circumstance, be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles.

415 U.S. 452, 462 (1974). This reasoning applies equally here. Adjudicating Obaydullah's habeas petition neither duplicates, nor disrupts, nor reflects negatively upon a military commission that has not been, and may never be, convened; nor, to recur to *Councilman*, will it upset "the balance that Congress struck between [national security] and fairness to individual [detainees] when it created [military commissions]."

The Government argues further that even if abstention pursuant to *Councilman* is not required because no military commission proceeding is pending, the district court did not abuse its discretion to control its own docket, *see Clinton v. Jones*, 520 U.S. 681, 706 (1997), by staying the habeas case in anticipation of such a proceeding. But to what end did it do so? As we have explained, the considerations of comity underlying *Councilman* are not implicated when no military commission proceeding is pending. Although there may be circumstances where a district court could, merely for reasons

of "economy of time and effort," *see Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), stay a detainee's habeas petition in anticipation of an imminent military commission proceeding, to have done so after the passage of time involved here and with no end in sight is insupportable in view of the Supreme Court's instruction that "the costs of delay can no longer be borne by those who are held in custody"; they "are entitled to a prompt habeas corpus hearing." *Boumediene*, 128 S. Ct. at 2275; *see also Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) ("habeas proceedings implicate special considerations that place unique limits on a district court's authority to stay a case in the interest of judicial economy"). Of course, the charges may be referred to a military commission tomorrow — which could raise anew the question of possible abstention — but they may also be dropped tomorrow, or remain pending for months or years to come.

### III. Conclusion

Seeing no reason sufficient to justify denying Obaydullah the "prompt habeas corpus hearing" to which he is entitled, we reverse the order of the district court denying his motion to vacate the stay of his habeas petition. This matter is remanded to the district court for further proceedings consistent herewith.

*So ordered.*