# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 14, 2011        Decided January 13, 2012

No. 10-7167

BELIZE SOCIAL DEVELOPMENT LIMITED,
APPELLANT

v.

GOVERNMENT OF BELIZE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cv-02170)

*Louis B. Kimmelman* argued the cause and filed the briefs for appellant. *Joseph S. Hall* entered an appearance.

*Juan C. Basombrio*, pro hac vice, argued the cause for appellee. With him on the brief was *Jay C. Johnson*.

Before: ROGERS, GARLAND and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

Dissenting opinion by *Circuit Judge* KAVANAUGH.

ROGERS, *Circuit Judge*: This case involves a petition to confirm and enforce a foreign arbitration award against the Government of Belize pursuant to section 207 of the Federal Arbitration Act, 9 U.S.C. § 207. The plaintiff appeals an order staying the proceeding pending the outcome of related litigation in Belize. We conclude that the stay order as issued exceeded the proper exercise of authority of the district court and remand the case for further proceedings.

## I.

The Federal Arbitration Act, 9 U.S.C. § 201–208 (2006) ("FAA"), codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which addresses "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." Art. I, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ("New York Convention"). Under the New York Convention, "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." *Id.* art. III. Section 207 of the FAA provides that the district court, when exercising its original jurisdiction pursuant to section 203 of the FAA, "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. Article VI of the Convention limits the grounds for deferral of a decision on enforcement to those specified in Article V(1)(e): enforcement proceedings may be adjourned only if "an application for the setting aside or suspension of the award has been made to a competent authority," N.Y. Convention art. VI, "of the country in which, or under the law of which, that award was made," *id.* art. V(1)(e).

Consistent with the "emphatic federal policy in favor of arbitral dispute resolution" recognized by the Supreme Court as "appl[ying] with special force in the field of international commerce," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards: the Convention is "clear" that a court "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." *TermoRio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928, 935 (D.C. Cir. 2007) (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir. 1997)); *see also Alghanim & Sons*, 126 F.3d at 20. It is equally clear that a court may adjourn enforcement proceedings only on the grounds explicitly set forth in Article V(1)(e) of the Convention. *See* N.Y. Convention art. VI.

The facts underlying the issuance of the challenged stay order are as follows. On September 19, 2005, the Prime Minister of Belize executed an "Accommodation Agreement" with Belize Telemedia Limited ("Telemedia")[1] on behalf of the Government of Belize. The Agreement called for Telemedia to acquire certain properties "in order to better accommodate the Government's telecommunications needs," and "in consideration" for which the Government of Belize agreed to give Telemedia a number of assurances and benefits. Gov't

---

[1] The original party to the Agreement was Belize Telecommunications Limited. On May 29, 2007, pursuant to the Belize Telecommunications Undertaking (Belize Telecommunications Limited Operators) Vesting Act of 2007, the businesses of Belize Telecommunications Limited were transferred to Belize Telemedia Limited.

Telecomm. Accomodn. Agrmt. § 1, Sept. 19, 2005.[2] Telemedia would be entitled to: a tax set-off for purposes of a guaranteed 15% minimum rate of return, favorable business tax treatment, and exemption from import taxes. The Agreement stated that it was governed by Belize law, *id.* § 15.1, and that if Telemedia were to bring proceedings against the Government of Belize or its assets in relation to the Agreement, the Government "irrevocably and unconditionally" waived its immunity, *id.* § 15.5. Additionally, the Agreement provided:

> Any dispute arising out of or in connection with this Agreement including any question regarding its existence, validity or termination, which cannot be resolved amicably between the parties shall be referred to and finally resolved by arbitration under the London Court of International Arbitration (LCIA) Rules which Rules are deemed to be incorporated by reference under this Section. There shall be 3 arbitrators.

*Id.* § 15.2.

On February 8, 2008, a new Prime Minister, who also served as the Minister of Finance of Belize, publically and formally announced that he believed the Agreement was invalid and would not abide by it. Telemedia, claiming breaches of the Agreement, invoked the arbitration clause and submitted a request for arbitration to the LCIA on May 9, 2008. Although notified, the Government of Belize did not participate in the proceedings. The arbitral tribunal issued a final award on March

---

[2] Belize and Telemedia subsequently adopted three amendments to the Agreement on November 21, 2005, December 15, 2006, and January 7, 2008. The "Agreement" referenced in this opinion includes these amendments.

18, 2009, ("Final Award") ruling that the Agreement was valid and binding on the Government of Belize under Belize law, and that it had jurisdiction over Telemedia's claims, which it concluded were meritorious and entitled Telemedia to declaratory relief and damages of over 38 million in Belize dollars. On March 20, 2009, the Prime Minister repeated his view that the Agreement was illegal and invalid, noted that the local courts had rejected its provisions on tax exemption, and stated that the Government of Belize would "not be bound by any ruling of a foreign arbitral tribunal where that ruling conflicts with a position taken by Belize's superior courts." Resp't Mot. Stay or, in Alternative, Dismiss Pet., Exh. 29 (Decl. Juan Basombrio, Esq. Mar. 26, 2010, attaching newspaper article quoting Prime Minister). The same day, Telemedia assigned the monetary portion of the Final Award to Belize Social Development Limited ("BSDL"), a company incorporated in the British Virgin Islands.

On April 6, 2009, the Attorney General of Belize sued Telemedia and BSDL in the Belize Supreme Court, alleging that "enforcement of the 'Final Award' . . . would be contrary and repugnant to the Constitution and the Laws of Belize," and sought to block its enforcement. *Id*. Exh. 1 (Decl. of Michael Young, S.C., Mar. 26, 2010, attaching the Fixed Claim Form 1–2). The court issued an *ex parte* interim injunction prohibiting Telemedia and BSDL from pursuing enforcement of the Final Award in any jurisdiction outside of Belize. *See id.* Exh. 5 (Order, Apr. 7, 2009, at 2). When Telemedia sought to have the court discharge the injunction and issue a declaration that the Final Award was valid and binding on the Government of Belize, the court, on July 20, 2009, extended the injunction "until the conclusion of the Claim herein or until further Order." *Id*. Exh. 12 (Order, July 20, 2009, at 2); *see id.* Exh. 13 (Sup. Ct. Decision, July 20, 2009).

On November 16, 2009, BSDL filed a petition in the district court here to confirm and enforce the Final Award pursuant to section 207 of the FAA, 9 U.S.C. § 207. The Government of Belize moved to stay or, in the alternative, to dismiss the petition. It also amended the Supreme Court Judicature Act "to strengthen the provisions relating to contempt of court" by subjecting persons who fail to comply with an injunction to fines up to $250,000, or imprisonment for five to ten years, or both, with an additional fine of $100,000 for each day the offense continues. Supreme Court of Judicature (Amendment) Act, 2010, c. 91, § 106A (Belize). Citing this enactment, BSDL moved to suspend the district court's scheduling order and for a status conference. The district court denied BSDL's motion to suspend and its subsequent motions to clarify. By minute order of October 12, 2010, the district court granted Belize's motion to stay the petition to confirm "pending resolution of the parties' case before the Belize Supreme Court."

BSDL appeals the stay order or, in the alternative, if the order is not final, requests that its appeal be treated as a petition for a writ of mandamus.

## II.

This court has treated an attempted appeal as an application for a writ of mandamus, and granted effective relief, where a "stay order as issued exceeded the proper exercise of authority of the District Court." *Dellinger v. Mitchell*, 442 F.2d 782, 782 (D.C. Cir. 1971); *see id.* at 788–89; *cf. Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 548–49 & n.6 (D.C. Cir. 1992) (citing *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 749 (2d Cir. 1991); *Beard v. Carrollton R.R.*, 893 F.2d 117, 120 (6th Cir. 1989)). Given the "carefully crafted framework for the enforcement of international arbitration awards" *TermoRio*, 487 F.3d at 935, presented in the FAA and the New York Convention, it is

evident that the stay order as issued exceeded the proper exercise of authority of the district court.

"The traditional use of the writ [of mandamus] in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 (1943); *see Cheney v. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004). Because the writ, *see* 28 U.S.C. § 1651(a), is a "'drastic and extraordinary' remedy," *Cheney*, 542 U.S. at 380 (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)), "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify [its] invocation," *id*. (citations and internal quotation marks omitted). Accordingly, the writ will issue only upon the satisfaction of three conditions: there must be "no other adequate means to attain the relief [the petitioner] desires"; "the petitioner must satisfy the burden of showing that [its] right to issuance of the writ is clear and indisputable"; and "the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 380–81 (citations and internal quotation marks omitted). BSDL's appeal satisfies each of these conditions.

**1.** "Ordinarily mandamus may not be resorted to as a mode of review where a statutory method of appeal has been prescribed or to review an appealable decision of record." *Roche*, 319 U.S. at 28. The relief BSDL desires — "forthwith consideration of" its petition for enforcement — "could obviously not be preserved for presentation on appeal from the ultimate disposition of this litigation in the District Court." *Dellinger*, 442 F.2d at 790. Nor is there a statutory method of appeal applicable to the stay.

"[A] stay is not ordinarily a final decision for purposes of [28 U.S.C.] § 1291," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983), but may be where the effect of the stay is to put the plaintiff "effectively out of court," *id.* at 9; *see Idlewild Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962). BSDL invokes the "effectively out of court" doctrine in support of its appeal. The doctrine's applicability, however, "is limited to cases where . . . the object of the stay is to require all or an essential part of the federal suit to be litigated" outside of federal court. *Moses H. Cone*, 460 U.S. at 10 n.11. Because the pending action in Belize has no preclusive effect on the district court's disposition of the petition to enforce pursuant to the FAA and the New York Convention, *see* N.Y. Convention art. V(1)(e); *Karaha Bodas v. Perusahaan Pertambangan Minyak*, 335 F.3d 357, 367–68 (5th Cir. 2003), the unidentified "object" of the stay could hardly be "to require all or an essential part," *Moses H. Cone*, 460 U.S. at 10 n.11, of the enforcement petition to be litigated in Belize. *See Kreditverein der Bank v. Nejezchleba*, 477 F.3d 942, 946–47 (8th Cir. 2007); *Boushel v. Toro Company*, 985 F.2d 406, 408–09 (8th Cir. 1993). The stay at issue may be sufficiently indefinite as to require a finding of pressing need, *see infra* subpart 2, but it is not so indefinite as to constitute the equivalent of a dismissal under the "effectively out of court" doctrine. *See Dellinger*, 442 F.2d at 785. Therefore, the statutory method of appeal under § 1291, even as applied to stay orders under the "effectively out of court" doctrine, does not afford BSDL adequate means to attain the relief it requests.

BSDL also invokes the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). This court has acknowledged the similarities between the requirements for mandamus and collateral order review. *See In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1063 n.4 (D.C. Cir. 1998) (citing *In re Papandreou*, 139 F.3d 247, 250 (D.C. Cir.

1998)); *In re Kessler*, 100 F.3d 1015, 1016 (D.C. Cir. 1996); *see also* 16 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3932.1, at 510 & n.32.5 (2d ed. 1996 & Supp. 2011). In cases where "the claim of appealability [is] not insubstantial," the court is mindful of "the advantage of limiting the use of appellate recourse in response to stay orders, yet keeping the door open for the occasional case reflecting abuse of discretionary authority." *Dellinger*, 442 F.2d at 790. Because BSDL has shown a clear and indisputable right to the issuance of the writ and the writ is appropriate here, we proceed with the analysis under the mandamus framework. *See In re Sealed Case No. 98-3077*, 151 F.3d at 1063 n.4; *cf. United States v. Gonzales*, 150 F.3d 1246, 1250 n.1 (10th Cir. 1998), *cert. denied* 525 U.S. 1129 (1999).

**2.** BSDL has shown a "clear and indisputable" right to the issuance of the writ, for the issuance of the stay was not based on a ground set forth in the New York Convention. Under the FAA, Articles V(1)(e) and VI of the New York Convention provide the only grounds on which the district court "may, if it considers it proper, adjourn the decision" on enforcement: "If an application for the setting aside or suspension of the award has been made to a competent authority," N.Y. Convention art. VI, "of the country in which, or *under the law of which*, that award was made," *id.* art. V(1)(e) (emphasis added). *See* 9 U.S.C. § 207.

In support of the stay, the Government of Belize relies on section 15.1 of the Agreement, which states the law of Belize governs the Agreement, in contending that Belize is the country "under the law of which" the Final Award was made.[3] The

---

[3] The fact that Belize is not a party to the New York Convention is irrelevant. If the place of the award is "in the territory of a party to the Convention, all other Convention states are required

phrase "under the law of which" in Article V(1)(e), however, refers to the procedural law governing the arbitration, not the substantive law governing the Agreement. *See Karaha Bodas v. Perusahaan Pertambangan Minyak*, 364 F.3d 274, 289 (5th Cir. 2004); *Alghanim & Sons,* 126 F.3d at 21 & n.3; *M & C Corp. v. Erwin Behr GmbH & Co.*, 87 F.3d 844, 847–48 (6th Cir. 1996); *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 21 n.5 (D.D.C. 2011); *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima*, 745 F. Supp. 172, 177–78 (S.D.N.Y. 1990); RESTATEMENT (THIRD) OF INT'L COMM. ARB. § 5–12 (2010). The Government of Belize cites no authority to the contrary. The Agreement provides that the LCIA Rules govern arbitration arising from any dispute over its terms. Because the arbitration occurred in London and under the arbitral laws of England, the courts of England are the competent authority with primary jurisdiction over the Final Award; absent proceedings for setting aside or suspending the Final Award in those courts, the Government of Belize can offer no basis on which to conclude that the stay of BSDL's petition for enforcement was properly issued under the FAA and New York Convention.[4]

---

to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration." *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999). The Award was rendered in London, and BSDL seeks enforcement in the United States; both England and the United States are parties to the New York Convention.

[4] The possibility of "multiple judicial proceedings on the same legal issues" affords the district court no other justification for the stay, for these "are characteristic of the confirmation and enforcement of international arbitral awards under the Convention." *Karaha Bodas*, 335 F.3d at 368.

Furthermore, to the extent the stay purported to be issued pursuant to the district court's inherent authority in the interest of judicial economy, "[t]he applicable jurisprudence appears in *Landis v. North American Co.*, 299 U.S. 248 (1936)." *Dellinger*, 442 F.2d at 786; *see McSurely v. McClellan*, 426 F.2d 664 (D.C. Cir. 1970); *cf. Obaydullah v. Obama*, 609 F.3d 444, 449 (D.C. Cir. 2010). In *Landis*, the Supreme Court instructed that a court abuses its discretion in ordering a stay "of indefinite duration in the absence of a pressing need." 299 U.S. at 255. A stay is "immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description," and "an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done." *Id.* at 257. Underlying the Court's analysis was a recognition that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.* at 255.

The scope of the stay and the reasons for its issuance determine whether a stay is immoderate. For instance, in *Trujillo v. Conover & Co. Communications*, 221 F.3d 1262, 1264 (11th Cir. 2000), the Eleventh Circuit held that a stay until "the Bahamanian Courts conclude their review" of related litigation was immoderate because it was indefinite in scope and the order provided "no reason sufficient to justify the indefinite stay." *Id.* at 1264–65. The Government of Belize would distinguish *Trujillo*, along with *Landis* and presumably *Dellinger*, by interpreting those stays to encompass all possible appeals, while here the stay encompasses only the case pending before the Belize Supreme Court. Yet the record fails to show either what a "resolution" of that case would entail or when such a resolution is likely to be reached, and so the stay has "the legal

effect of preventing [BSDL] from proceeding with [its] claims in federal court for an indefinite period of time, potentially for years." *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1169 (11th Cir. 2007). The Government of Belize is not in a position to offer the rationales in *Dellinger*, 442 F.2d at 785, where the U.S. government expressed concern that proceeding with a civil case would circumvent court orders in a criminal case and suggested resolution of the latter would result in stipulations between the parties in the former. Such concerns would be irrelevant under the FAA and the New York Convention, and there appears to be no possibility of a stipulation here. And unlike in *Trujillo*, 221 F.3d at 1264; *see also King*, 505 F.3d at 1172, the stay order includes no provision for status updates or further review.

Hence, the stay as issued is sufficiently indefinite to require a finding of a pressing need under *Landis*. The Government's suggestion such a finding is required only where there is a "fair possibility that the stay will work damage to someone else," Appellee's Br. 27 (quoting *Landis*, 299 U.S. at 255), ignores that in *Landis* sufficient damage consisted of undue delay of the kind BSDL suffers here. *See Landis*, 299 U.S. at 256. As this court has interpreted and applied *Landis*, a district court's issuance of an indefinite stay order must be supported by "a balanced finding that such need overrides the injury to the party being stayed." *Dellinger*, 442 F.2d at 787. And the court has vacated stay orders where "the [d]istrict [c]ourt has not advanced any reason for a stay of such potentially long duration." *McSurely*, 426 F.2d at 671; *cf. Dellinger*, 442 F.2d at 787. Here, as in *Dellinger* and *McSurely*, no articulation of need, pressing or otherwise, accompanied issuance of the stay order. Nor did the district court engage in the interest balancing required by *Landis*, which calls for the district court, in "the exercise of judgment," to "weigh competing interests and maintain an even balance," 299 U.S. at 254–55, between the court's interests in judicial economy and any possible hardship to the parties, *see id.*

at 259. Therefore the order as issued, staying BSDL's petition pending foreign litigation of indefinite duration, exceeded the proper exercise of discretion by the district court under *Landis*.

**3**. Mandamus is appropriate because the FAA, by codifying the New York Convention, provides a carefully structured scheme for the enforcement of foreign arbitral awards and represents an "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Mitsubishi Motors Corp.*, 473 U.S. at 631. The plain terms of the FAA instruct a district court reviewing a foreign arbitral award to "confirm the award unless it *finds* one of the grounds for refusal or deferral of recognition or enforcement . . . specified in the [New York] Convention." 9 U.S.C. § 207 (emphasis added). No such finding supported issuance of the stay here, and that alone is sufficient to justify mandamus. Moreover, there could not have been such a finding under Article VI of the Convention, for no "application for the setting aside or suspension of the award" had been made to a "competent authority" in England, the "country in which" and "under the laws of which [the] award was made." N.Y. Convention arts. V(1)(e), VI.

Given the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Hoai v. Sun Ref. & Mktg. Co.,* 866 F.2d 1515, 1519 (D.C. Cir. 1989) (quoting *Moses H. Cone*, 460 U.S. at 15) (internal quotation marks omitted), the original jurisdiction vested in the district court by section 203 of the FAA and the limitations on that authority under section 207 of the FAA defined the district court's task: to review and grant BSDL's petition to confirm the Final Award absent a finding that an enumerated exception to enforcement specified in the New York Convention applied. The stay order as issued was not in conformity with federal law and international commitments, and the indefinite stay, lacking

justification by any pressing need, exceeded the bounds of any inherent authority the district court may have had to stay proceedings in the interest of judicial economy. Mandamus is appropriate here "to compel the district court to exercise its authority when it is its duty to do so." *Roche*, 319 U.S. at 26.

Our dissenting colleague makes much of the lack of an opposition to the stay. Instead of filing an opposition to the motion for a stay, BSDL filed a motion to suspend the scheduling order and for a status conference, advising the district court that its failure to respond was based not on agreement that a stay was warranted but on fear of criminal sanctions for violation of the anti-enforcement injunction issued by the Supreme Court of Belize. Both BSDL's petition to enforce the Final Award and Belize's motion to stay the enforcement proceedings alerted the district court that it was obligated to proceed in accordance with the FAA and the New York Convention. Contravening the clear dictates of this governing law, both federal and international, and lacking supporting reasoning of any kind, contrary to Supreme Court precedent, the district court's stay order is extraordinary in nature. Although our dissenting colleague repeatedly characterizes the stay order — which has already lasted for more than a year — as "temporary, " Dis. Op. 1, it in fact contained no temporal limitations and could very well last indefinitely.

We conclude that there is no need to vacate the stay or mandate any action by the district court; instead, we remand the case because this court may "rightfully assume that the [district] court will conduct further proceedings not inconsistent with our opinion," *Dellinger*, 442 F.2d at 790.

KAVANAUGH, *Circuit Judge*, dissenting:

I respectfully dissent. This case arises out of a messy commercial dispute between a Belize company and the Government of Belize. A London arbitration panel ruled in favor of the Belize company. The company then sued in U.S. District Court to enforce the arbitration award. Because of ongoing judicial proceedings in Belize related to this matter, the Government of Belize asked for a temporary stay, which was *uncontested* by the company. The District Court then entered a temporary stay – understandably, since the stay is only temporary and the company did not oppose it.

The company has now appealed and, in the alternative, sought mandamus to overturn the temporary stay. But we do not have appellate jurisdiction. As the majority opinion appears to acknowledge, there is no final order because the company was not placed "effectively out of court," nor does this case fit within the narrow confines of the collateral order doctrine. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 n.11 (1983) ("most stays do not put the plaintiff 'effectively out of court'"; stays are final orders when "the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum"); *id*. at 12 (stay order falls within collateral order doctrine when it "amounts to a refusal to adjudicate the merits").

Although the majority opinion does not assert that we have appellate jurisdiction under the principles governing appeals of final or collateral orders, it invokes mandamus jurisdiction. But mandamus is an "extraordinary" remedy reserved for correcting egregious missteps by a district court, not for upending temporary stay orders – and particularly not temporary stay orders like the one here, which was issued in response to an *uncontested* temporary stay motion. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (writ of

mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes") (internal quotation marks omitted); *id*. ("the writ is one of the most potent weapons in the judicial arsenal") (internal quotation marks omitted); *id*. ("only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion will justify the invocation of this extraordinary remedy") (citations and internal quotation marks omitted).

Even if we think the District Court erred under the Federal Arbitration Act by entering a temporary stay, its error was hardly "extraordinary." Mandamus for this case is akin to using a chainsaw to carve your holiday turkey. Indeed, if you ask me which is the more extraordinary – the District Court's temporary stay or this Court's invocation of mandamus jurisdiction under these circumstances – I would say the latter.

I would dismiss the appeal for lack of appellate jurisdiction and deny the petition for a writ of mandamus. I respectfully dissent.