**BCB HOLDINGS LIMITED and The Belize Bank Limited,**
**Petitioners/Plaintiffs**

v.

**The GOVERNMENT OF BELIZE,**
**Respondent/Defendant.**

**Civil Action No. 14–1123 (CKK)**

United States District Court,
District of Columbia.

Signed 02/06/2017

---

Dana C. MacGrath, Louis B. Kimmelman, Sidley Austin LLP, New York, NY, Kristin Graham Koehler, Sidley Austin, LLP, Washington, DC, for Petitioners/Plaintiffs.

Creighton R. Magid, Dorsey & Whitney LLP, Washington, DC, Juan C. Basombrio, Dorsey & Whitney LLP, Costa Mesa, CA, for Respondent/Defendant.

---

## MEMORANDUM OPINION

COLLEEN KOLLAR–KOTELLY,
United States District Judge

This matter comes before the Court on Petitioners' [53] Motion for an Order Pursuant to 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment and [54] Motion for Anti–Suit Injunction and Temporary Restraining Order. Petitioners BCB Holdings Limited ("Holdings") and the Belize Bank Limited ("BBL") (collectively "Petitioners") initiated an arbitration against the Government of Belize ("GOB") on October 16, 2008, before the London Court of International Arbitration ("LCIA") in London, England. The LCIA issued an award in favor of Petitioners, and this Court subsequently confirmed that award and entered judgment in favor of Petitioners. The GOB apparently does not intend on paying the judgment entered by this Court.

Petitioners now request an order authorizing the enforcement of that judgment and also seek an anti-suit injunction enjoining the GOB from taking certain actions in Belize that would effectively prevent Petitioners from enforcing this Court's judgment. For the reasons set forth below, the Court GRANTS Petitioners' [53] Motion for an Order Authorizing Enforcement of Judgment, DENIES WITHOUT PREJUDICE Petitioners' [54] Motion for Anti–Suit Injunction on the present record, and DENIES Petitioners' [54] Motion for a Temporary Restraining Order on the grounds asserted in this case.

## I. BACKGROUND

Aggrieved by the repudiation of a Settlement Deed entered into between the parties, Petitioners initiated an arbitration against the GOB on October 16, 2008, before the LCIA in London, England. Decl. of Jessica Wells, ECF No. 32–3, at ¶ 5(c). The GOB opted to abstain from the arbitration, and the proceedings were accordingly conducted *ex parte. Id.* On August 18, 2009, the arbitral tribunal issued an award in favor of Petitioners and concluded that the GOB owed Petitioners BZ $40,843,272.34 in damages plus interest and costs. *Id.* at ¶ 5(f).

On August 21, 2009, Petitioners sought to enforce their arbitral award in Belize. Decl. of Louis Kimmelman, ECF No. 1–2, at ¶ 16. The GOB opposed the enforcement of the award, arguing that it was contrary to the law and public policy of Belize. *Id.* The Supreme Court of Belize enforced the Award in late 2010, and the GOB appealed this decision in early 2011 to the Belize Court of Appeals. *Id.* at 17–18. The appellate court reversed the decision below and held that the Award would not be enforced. *Id.* at 19. On July 26, 2013, the Caribbean Court of Justice ("CCJ"), Bel-

ize's final court of appeal, affirmed on public policy grounds. *Id.* at 20.

On July 1, 2014, Holdings and BBL filed in this Court a Petition to Confirm Foreign Arbitration Award and to Enter Judgment or, Alternatively, Complaint to Recognize and Enforce Foreign Money Judgment. *See* Petition to Enforce, ECF No. 1. This Court confirmed Petitioners' arbitration award on June 24, 2015. *See BCB Holdings Ltd. v. Gov't of Belize*, 110 F.Supp.3d 233 (D.D.C. 2015), *aff'd*, 650 Fed.Appx. 17 (D.C. Cir. 2016), *cert. denied*, No. 16–136, —— U.S. ——, 137 S.Ct. 619, —— L.Ed.2d ——, 2017 WL 69187 (U.S. Jan. 9, 2017). A copy of this opinion is attached hereto as Exhibit A. The Court then entered judgment confirming the Award and converting it into U.S. dollars, plus prejudgment interest, in the total amount of $27,429,996.56. ECF No. 47.

Respondents opposed the petition to confirm the award on numerous grounds, one of which is of particular note here. Respondents claimed that the final judgment rendered by the CCJ refusing to enforce the arbitration award prevented the Petitioners from enforcing the award in this jurisdiction. *See BCB Holdings Ltd.*, 110 F.Supp.3d at 245–46. Specifically, Respondents argued that the doctrines of res judicata, collateral estoppel, and international comity barred the petition to confirm because a competent court, the CCJ, had already issued a final judgment refusing to enforce the Award. *Id.* at 245. The Court rejected this argument. *Id.* The Court explained that only the country in which an award is made, referred to as the primary jurisdiction, may set aside an award. *Id.* at 246. All other member-countries to the New York Convention are designated as secondary jurisdictions. Although these secondary jurisdictions may refuse to enforce an award, their doing so does not preclude other jurisdictions from

enforcing it. *Id.* In this case, England—which did recognize and confirm the award—was the primary jurisdiction, and accordingly the CCJ decision did not prevent this Court from enforcing Petitioners' award. *Id.*

Respondents appealed this decision to the Court of Appeals for the D.C. Circuit, which affirmed this Court's judgment in its entirety. *See BCB Holdings Ltd. v. Gov't of Belize*, 650 Fed.Appx. 17, 20 (D.C. Cir. 2016), *cert. denied*, No. 16–136, —— U.S. ——, 137 S.Ct. 619, —— L.Ed.2d ——, 2017 WL 69187 (U.S. Jan. 9, 2017). A copy of this opinion is attached hereto as Exhibit B. The United States Supreme Court then denied Respondent's petition for certiorari on January 9, 2017. *See Gov't of Belize v. BCB Holdings Ltd.*, No. 16–136, —— U.S. ——, ——, 137 S.Ct. 619, —— L.Ed.2d ——, 2017 WL 69187, at *1 (U.S. Jan. 9, 2017). On January 23, 2017, Petitioners filed a motion for an order pursuant to 28 U.S.C. § 1610(c) authorizing enforcement of the judgment, which is now pending before this Court.

Thereafter, Belize took a number of steps that were apparently aimed at preventing Petitioners from taking any further actions to enforce their judgment from this Court. On January 27, 2017, Belize introduced legislation in the Belizean Parliament entitled The Crown Proceedings (Amendment) Act 2017. This Act criminalizes efforts to enforce foreign judgments against Belize in any court outside Belize. The Act states: "Where it has been determined by a court in Belize, that a foreign judgment is unlawful, void or otherwise invalid, a person who, whether in or outside of Belize, and whether by the institution of proceedings or otherwise, enforces or attempts to enforce the foreign judgment commits an offence." Pets.' Ex. A, ECF No. 54–2 (Crown Proceedings (Amendment) Act 2017), § 3–29B(1). Viola-tion of this Act results in criminal penalties for individuals consisting of fines not exceeding BZ $150,000, or terms of imprisonment not exceeding two years, or both. *Id.*, § 3–29B(2). The statute states that "[a]n application shall lie to the Supreme Court to issue an injunction against a person restraining the person from commencing, intervening in or continuing any proceedings for enforcement of a foreign judgment, whether in or outside of Belize, on the basis that a competent court in Belize has declared such foreign judgment unlawful, void or otherwise invalid." *Id.*, § 3–29B(3).

On the same day, Belize introduced legislation entitled The Central Bank of Belize (International Immunities) Act, 2017. This Act states that "[a] person commits an offence who, whether in Belize or outside of Belize, and whether in respect of a matter occurring before or after the coming into operation of this Act ... (a) has instituted, intervened in or sought the conduct of proceedings in any foreign State, being proceedings from which the Bank or the property of the Bank would, by virtue of section 3, be immune ...." Pets.' Ex. B, ECF No. 54–3 (Central Bank of Belize (International Immunities) Act, 2017), § 4–(1). Section 3 of the act purports to immunize the property of the Central Bank of Belize from proceedings for attachment, arrest or execution in any foreign court. *Id.*, § 3.

There is no dispute as to the purpose of these statutes. On January 27, 2017, the Prime Minister of Belize expressly stated in a speech to the Belize Parliament that the statutes are intended to interfere with Petitioners' efforts to enforce this Court's judgment against the GOB:

Well, not to put too fine a point on it, and in fact, to speak to circumstances that we're all already familiar with, we had thought it prudent to do this be-

cause of the fact that the Ashcroft Concerns, BSDL, BCB Holdings, Ltd., which I gather is now trading—has changed its name to Caribbean Investment Holdings, Ltd.—and The Belize Bank, Ltd. have obtained final judgment in the United States on arbitral awards given against the government of Belize and in favor of BSDL, Belize Bank, Ltd., and BCB Holdings, Ltd. Last Tuesday, those entities filed a motion in the District Court in Washington, D.C., filed an application to be allowed to enforce those judgments against the government of Belize. Notwithstanding that certainly in one case, as all Belize, and indeed now all the world knows, the final judgment flies completely in the face of the decision of our highest court, the CCJ, which decision says that that arbitral award is unenforceable, because it is repugnant to public policy, and it is void and illegal.

Decl. of Louis B. Kimmelman, ECF No. 54–1, ¶ 15. On January 31, 2017, the Belizean legislature enacted both statutes. *Id.* ¶ 16.

On February 1, 2017, the GOB sent the Registrar for the CCJ a letter stating that it "will tomorrow file with the [CCJ] an urgent inter party application for an Anti–Enforcement Injunction to restrain [Petitioners] from enforcing or causing to be enforced the very same LCIA Final Award for which this Honourable Court, in the matter at caption, has declined enforcement by its judgment dated July 26, 2013." Pets.' Ex. C, ECF No. 54–4 at 1. The GOB represented to the CCJ that the need for injunctive relief was urgent because Petitioners had filed a motion for an order authorizing enforcement of judgment in this Court. *Id.* at 1–2.

On February 2, 2017, the Registrar responded to the GOB's letter, explaining that the CCJ "has not observed from the content of your communication any basis on which it can exercise powers which are ordinarily exercised by the Supreme Court. Accordingly, it may be more appropriate to file your application in the Supreme Court of Belize unless you can show the Caribbean Court of Justice has jurisdiction." Pets.' Ex. D, ECF No. 54–5 at 4. The GOB filed its application for injunctive relief with the CCJ regardless, seeking "[a]n Order restraining [Petitioners,] their successors, assigns, and/or subsidiaries whether by themselves, their officers, servants, affiliates, or agents from enforcing or causing to be enforced the said LCIA Final Award or any judgment upon the said award, in any jurisdiction or to commence or continue any other legal or arbitral proceedings in any country or jurisdiction whether in or outside of Belize relating to or arising out of the said final Award." Pets.' Ex. G, ECF No. 54–8 at 2. The CCJ immediately denied the GOB's application, holding that "the application for injunctive relief filed by the Respondent/Applicant on the 2nd day of February, 2017 is hereby dismissed for lack of jurisdiction, there being no pending appeal before the Court." Pets.' Ex. I, ECF No. 54–10.

Later that day, the GOB notified Petitioners that it would seek this same injunctive relief in the Supreme Court of Belize. Pets.' Ex. J, ECF No. 54–11. The GOB provided a draft of the application it intended to file, which sought an order that Petitioners "be restrained from enforcing or causing to be enforced the Final Award issued by the London Court of International Arbitration (LCIA) in Arbitration No. 81169 in the sum of BZ $40,843,272.34 in Damages, £206,248.14 in arbitration costs and BZ $2,960,735.69 in legal and professional costs in favour of the Respondents ('the Award') or upon any judgment upon the said Award in any jurisdiction or

to commence or continue any other legal or arbitral proceedings in any country or jurisdiction whether in or outside of Belize relating to or arising out of the said final Award or upon any judgment upon the said Award." Pets.' Ex. K, ECF No. 54–12, at 2.

On Friday, February 3, 2017, after being notified of this application, Petitioners filed the pending motion for an anti-suit injunction and a temporary restraining order in this Court. ECF No. 54. Petitioners sought from this Court an injunction preventing the GOB from "(i) initiating, prosecuting or maintaining any proceeding for injunctive relief in the courts of Belize, or in any other foreign court, against Holdings that seeks to restrain, interfere with or prevent Holdings from enforcing this Court's Judgment (and the underlying arbitral award) in the United States or (ii) threatening Holdings with any injunction or other court order that seeks to restrain, interfere with or prevent Holdings from enforcing this Court's Judgment (and the underlying arbitral award) in the United States." Proposed Order, ECF No. 54–15.

The Court held a teleconference with the parties on Petitioners' motion the afternoon it was filed, during which counsel for the GOB represented to the Court and to Petitioners that the GOB had already gone before the Supreme Court of Belize earlier that day to submit its application and provide oral argument. *See* Transcript of February 3, 2017 Telephone Conference, ECF No. 57–5 at 10:11–15 ("within the last hour the Government of Belize already went into court, already presented oral argument on their request for an injunction, and the judge has taken the matter under submission"). Counsel for Petitioners was not able to attend the argument on the extremely short notice. *Id.* at 13:22–14:7. At the conclusion of this teleconference, the Court ordered the GOB to respond to Petitioners' motion for a temporary restraining order pending the Court's decision on Petitioners' motion for an anti-suit injunction by no later than 10:00 a.m. on Monday, February 6, 2017. 2/3/2017 Min. Order. The Court also ordered the parties to appear for a hearing on the temporary restraining order at 11:00 a.m. Monday morning. *Id.*

Late Sunday night, Respondents filed a response to Petitioners' Motion for an Order Authorizing Enforcement of Judgment. ECF No. 56. Although challenging the scope and wording of the order sought by Petitioners in that motion, Respondents conceded that Petitioners were entitled to an order pursuant to section 1610(c) "confirming that a reasonable period of time has elapsed since entry of the Judgment, and that GOB has been given notice of entry of Judgment required by Section 1608(e)." *Id.* at 1.

On Monday morning the GOB filed its opposition to Petitioners' motion for a temporary restraining order. ECF No. 57. The GOB revealed therein that since the teleconference on Friday afternoon, the GOB had succeeded in obtaining the sought injunction from the Supreme Court of Belize, preventing Petitioners from doing anything further to enforce the judgment issued by this Court. *Id.* An hour later, the Court held a hearing on the record on Petitioners' pending motions. Counsel for the GOB appeared by telephone. Petitioner BBL did not attend at all, for fear of the criminal penalties that would result from violating the Belize injunction. Counsel for Petitioner Holdings appeared pro forma, but did not present any argument or otherwise take any action that could be construed as attempting to enforce or causing to be enforced the judgment in this case. Counsel for GOB warned counsel for Holdings that making any representations to the Court could

result in Holdings being criminally punished for violating the Belize injunction.

## II. DISCUSSION

### A. Petitioners' Motion for an Order Authorizing Enforcement of Judgment

The Court is in receipt of Petitioners' Motion for an Order Authorizing Enforcement of Judgment and Respondents' response to that motion. Both sides have had an opportunity to brief this matter and the Court considers it fully submitted. In their motion, Petitioners seek an order pursuant to 28 U.S.C. § 1610(c), authorizing enforcement of the judgment against the GOB. Section 1610(c) states that:

> No attachment or execution referred to in subsections (a) and (b) of this section shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). Petitioners argue that the GOB has had sufficient notice of the judgment, and that a reasonable amount of time has passed following entry of judgment, for it to seek attachment or execution.

█ Respondent concedes, at least for the purposes of this motion, that Petitioners are entitled to an order pursuant to section 1610(c) "confirming that a reasonable period of time has elapsed since entry of the Judgment, and that GOB has been given notice of entry of Judgment required by Section 1608(e)." *See* Resp.'s Opp'n to Mot. for Order Authorizing Enforcement of Judgment, ECF No. 56, at 1. Respondent only opposes Petitioners' motion to the extent it more broadly requests an order that Petitioners are "authorized to enforce" this Court's judgment. Respondent requests a more narrowly drafted order that states only that the notice and time requirements of section 1610(c) are satisfied.

The Court GRANTS Petitioners' motion. The Court notes that it does not interpret Petitioners' motion as asking for anything broader than what Respondents concede Petitioners are entitled to: a determination "that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter." *Id.* at 5. Accordingly, the Petitioners' motion is GRANTED to the extent it seeks this determination. The Petitioners' motion is also GRANTED in that the Court orders that Petitioners are authorized to seek to enforce their judgment via attachment or execution of GOB property in the appropriate jurisdiction. The Court does not make any determination as to the propriety of attachment or execution of any particular property under subsections (a) or (b) of section 1610. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F.Supp.2d 260, 270–71 (D.D.C. 2011) ("A 1610(c) order, in the context of this case, *does not* authorize the attachment or execution of particular property—or any property at all … Any court, whether this or another, would be required to evaluate a proposed attachment of specific property in this case by reviewing the jurisdictional provisions of § 1610(a)-(b), as well as any other immunities that might apply.").

### B. Petitioners' Motion for Anti–Suit Injunction and Temporary Restraining Order

█ Having granted Petitioners' motion under section 1610(c), there is no longer any need for this Court, on the present record, to issue an anti-suit injunction. Anti-suit injunctions are intended to pro-

tect the Court's jurisdiction. *See Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984) ("Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants."). Although the actions of the GOB are apparently aimed at preventing Petitioners from enforcing the judgment of this Court, at this time they do not interfere with this Court's jurisdiction. This Court has confirmed Petitioners' arbitration award, entered judgment in favor of Petitioners, and now authorized Petitioners to proceed to seek to enforce this judgment in the appropriate jurisdiction in which it can find attachable property of the GOB. Presently there is no issue left for this Court to adjudicate. Accordingly, strictly on the present record before the Court, the need to protect this Court's jurisdiction does not warrant issuing an anti-suit injunction. Petitioners' motion for an anti-suit injunction is therefore DENIED WITHOUT PREJUDICE. Given that the temporary restraining order Petitioners sought was intended to preserve the status quo pending resolution of the Petitioners' motion for an anti-suit injunction, the Court will likewise DENY Petitioners' motion for a temporary restraining order on the grounds asserted.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioners' [53] Motion for an Order Pursuant to 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment. The Court determines that the GOB has been given all required notice and that a reasonable period of time has elapsed following the entry of judgment in this matter and the giving of such notice for Petitioners to now seek attachment or execution pursuant to 28 U.S.C. § 1610(a)-(b). The Court further orders that Petitioners may now seek attachment or execution of GOB property to satisfy this Court's judgment pursuant to 28 U.S.C. § 1610(a)-(b) in the jurisdictions where such attachment or execution is appropriate. Additionally, the Court DENIES WITHOUT PREJUDICE Petitioners' [54] Motion for Anti–Suit Injunction on the present record, and DENIES Petitioners' [54] Motion for Temporary Restraining Order on the grounds asserted therein.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, and especially in light of the concessions of Respondent described therein, it is, this 6th day of February, 2017, hereby

**ORDERED** that Petitioners' [53] Motion for an Order Pursuant to 28 U.S.C. § 1610(c) Authorizing Enforcement of Judgment is GRANTED as set forth below and in the accompanying Memorandum Opinion. The Court determines that the Government of Belize has been given all required notice and that a reasonable period of time has elapsed following the entry of judgment in this matter and the giving of such notice for Petitioners to now seek attachment or execution pursuant to 28 U.S.C. §§ 1610(a)–(b). It is further

**ORDERED** that Petitioners may now seek attachment or execution of Government of Belize property to satisfy this Court's judgment pursuant to 28 U.S.C. §§ 1610(a)–(b) in the jurisdictions where such attachment or execution is appropriate. It is further

**ORDERED** that Petitioners' [54] Motion for Anti–Suit Injunction is, on the present record, DENIED WITHOUT PREJUDICE. It if further

**ORDERED** that Petitioners' [54] Motion for Temporary Restraining Order is,

on the grounds asserted in this case, DE-NIED.

**SO ORDERED.**

Attachments.

110 F.Supp.3d 233

United States District Court,

District of Columbia.

BCB Holdings Limited and The Belize Bank Limited, Petitioners/Plaintiffs

v.

The Government of Belize, Respondent/Defendant.

Civil Action No. 14–1123 (CKK)

Signed June 24, 2015

**Synopsis**

**Background:** Belize-registered parent holding company and its banking subsidiary petitioned to confirm foreign arbitral award, pursuant to Federal Arbitration Act (FAA) and Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), to convert award plus costs and interests to United States dollars, and to enter judgment in their favor against Government of Belize (GOB) or, alternatively, filed complaint to recognize and enforce foreign money judgment pursuant to District of Columbia Foreign–Money Judgments Recognition Act. GOB moved to dismiss petition and complaint.

**Holdings:** The District Court, Colleen Kollar–Kotelly, J., held that:

[1] New York Convention applied;

[2] Foreign Sovereign Immunities Act (FSIA) arbitration exception applied;

[3] personal jurisdiction was exercisable over GOB;

[4] petition was not time barred;

[5] petition was not barred by res judicata;

[6] forum non conveniens dismissal was not warranted;

[7] arbitration agreement in settlement deed was valid;

[8] subject matter was appropriate for arbitration; and

[9] enforcement of award would not violate public policy.

Petition granted; motion denied.

**Attorneys and Law Firms**

Dana C. MacGrath, Louis B. Kimmelman, Sidley Austin, LLP, New York, NY, Kristin Graham Koehler, Sidley Austin *238 LLP, Washington, DC, for Petitioners/Plaintiffs.

Creighton R. Magid, Juan C. Basombrio, Dorsey & Whitney LLP, Costa Mesa, CA, for Respondent/Defendant.

**MEMORANDUM OPINION**

COLLEEN KOLLAR–KOTELLY, United States District Judge

This matter comes before the Court on review of an arbitration award pursuant to 9 U.S.C. § 207 and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention"). Petitioners BCB Holdings Limited and the Belize Bank Limited ("BBL") (collectively "petitioners") initiated an arbitration on October 16, 2008, before the London Court of International Arbitration ("LCIA") in London, England. The Government of Belize ("GOB") opted to abstain from the arbitration, and the proceedings were conducted *ex parte.* On August 18, 2009, the arbitral tribunal issued an award in favor of petitioners and concluded that the GOB owed petitioners BZ$40,843,272.34 in damages plus interest

and costs ("Award").[1] On July 1, 2014, BCB and BBL filed a Petition to Confirm Foreign Arbitration Award and to Enter Judgment or, Alternatively, Complaint to Recognize and Enforce Foreign Money Judgment. *See* Petition to Enforce (July 01, 2014), Docket No. [1] ("Pet."). On January 30, 2015, the GOB filed a motion to dismiss the petition and complaint[2] (*see* Motion to Dismiss (Jan. 30, 2015), Docket No. [26] "Mot.") and a response to the petition (*see* Response to Petition (Jan. 30, 2015), Docket No. [28] "Resp. to Pet."). For the reasons explained below, the Court shall GRANT the petition and DENY respondent's motion to dismiss.

## I. BACKGROUND

BCB Holdings, previously known as Carlisle Holdings Limited, entered into a Settlement Deed with the GOB on March 22, 2005. *See* Pet. ¶ 4. The Settlement Deed was subsequently amended on June 21, 2006. *See id.* The Settlement Deed contains an arbitration clause which memorialized the parties' intention to arbitrate all disputes pursuant to the arbitration rules of the LCIA. *See id.* ¶ 20. In 2008, a dispute arose between the parties related to Clauses 4.1 and 4.2 of the Settlement Deed, in which the GOB agreed to

provide favorable tax treatment[3] to BBL and BCB Holdings.[4] *See id.* ¶ 21. Specifically, in August 2008, the Belize Commissioner of Income Tax rejected tax returns that were filed by BBL in accordance with the Settlement Deed. *See id.* ¶ 22. Petitioners considered this rejection a repudiation of the Settlement Deed and sought to *239 engage the GOB in arbitration before the LCIA on October 16, 2008. *See id.* ¶ 23. The GOB did not participate in the arbitral proceedings. *See id.* ¶ 24.

The arbitral tribunal, consisting of three arbitrators, unanimously rendered a foreign arbitral award in favor of petitioners on August 18, 2009. *See id.* ¶ 27. The arbitral tribunal concluded that the GOB had promised to provide certain tax treatment to petitioners and that "[i]n refusing to accept [petitioners'] tax returns based on this treatment, Respondent [GOB] breached its contractual warranty and clearly evinced its intention not to honour the agreement." Award ¶ 97[5]; Pet. ¶ 27. The arbitral tribunal also awarded petitioners BZ$40,843,272.34 in damages plus interest and costs to be paid by the GOB for breach of contract. *See* Pet. ¶ 27.

On August 21, 2009, petitioners sought to enforce the arbitral award in Belize. *See id.* ¶ 55. Opposing the enforcement of the

1. In their petition, petitioners note that the Award was issued on August 20, 2009. *See* Pet. ¶ 27. However, in a later filing, 1 petitioners state that the Award was issued on August 18, 2009. *See* Opp. to Resp. to Pet. at 42. The first page of the Award lists both dates, but the Court interprets this document to indicate that the issuance date is August 18, 2009, and the later date is the certification date by the LCIA Registrar.

2. On April 29, 2015, petitioners filed a Motion for leave to file a sur-reply (Docket No. [38]) to respondent's motion to 2 dismiss which the Court GRANTS.

3. Specifically, in Clauses 4.1 and 4.2 of the Settlement Deed, the GOB warranted that

BBL could offset overpayment 3 of business taxes against future business tax payments and that petitioners would be indemnified against all costs, expenses, losses and damages incurred by them arising out of any breach of warranties provided by the Settlement Deed. *See* Pet. ¶ 21.

4. BCB Holdings and BBL are both Belize registered companies. BCB Holdings is the parent company of BBL. *See* Pet. 4 ¶¶ 7–8.

5. The Award and the Settlement Deed are available in exhibit 2 to the petition. *See* Pet. Ex. 2, First Kimmelman Decl. 5

Award, the GOB argued that the Award was contrary to the law and public policy of Belize. *See id.* The Supreme Court of Belize enforced the Award in late 2010, and the GOB appealed this decision in early 2011 to the Belize Court of Appeals. *See id.* ¶¶ 56–57. The appellate court reversed the decision below and held that the Award would not be enforced. *See id.* ¶ 58. On July 26, 2013, the Caribbean Court of Justice ("CCJ"), Belize's final court of appeal, affirmed on public policy grounds, holding that the implementation of the tax treatment provisions of the Settlement Deed were not legislatively approved, which was "repugnant to the established legal order of Belize." *Id.* ¶ 59 (quoting *BCB Holdings Ltd., et al., v. Attorney General of Belize,* CCJ Appeal No. CV 7 of 2012, ¶ 53).

Petitioners also sought enforcement of the Award in England. The High Court of Justice, Queen's Bench Division, Commercial Court, in the United Kingdom, granted petitioners leave to enforce the Award as a judgment and issued a foreign money judgment on February 26, 2013 ("U.K.Judgment"). *See* Pet. ¶¶ 84–87. The U.K. Judgment recognized and confirmed the arbitral award and provided pre- and post-judgment interest at an annual rate of 3.38%, compounded annually, and past and future costs of the arbitration. *See id.* ¶ 87.

On March 31, 2010, the GOB enacted a criminal statute that penalized parties that violated Belize Supreme Court injunctions and those that aided such violations. *See id.* ¶ 41. Penalties included mandatory fines between $50,000 and $250,000 and/or imprisonment for a minimum of five years. *See id.* ¶¶ 42–43. This statute applied to offenses committed both in Belize and in other jurisdictions. *See id.* ¶ 43. In the meantime, the GOB initiated litigation to enjoin several enforcement proceedings in

any forum other than Belize courts. *See id.* ¶ 29. According to Petitioners, "the ease with which the GOB obtained injunctive relief in the Belize courts, coupled with the new mandatory penalties for violating such injunctions, had a chilling effect upon companies in Belize asserting legal claims against the GOB outside of Belize." *Id.*

BCB Holdings, BBL, and other companies challenged this criminal statute in legal proceedings in Belize. *See id.* ¶ 47. Although the Belize Supreme Court upheld the law, the Belize Court of Appeals and the CCJ concluded in 2012 and 2014 respectively, that the sections of the law *240 that created a criminal offense with mandatory penalties for violating Belize Supreme Court injunctions were unconstitutional and unenforceable. *See id.* ¶¶ 49–50. In its final decision on the validity of the 2010 criminal statute, the CCJ outlined limited circumstances in which the Belize Supreme Court could issue injunctions related to arbitration proceedings. *See id.* ¶ 52.

Between early 2009 and January 2014, while the mandatory penalties on parties who violated Belize court injunctions were still in effect, the GOB obtained numerous injunctions against parties with claims against the GOB. *See id.* ¶ 54. One such injunction was obtained against the British Caribbean Bank ("BCB Bank"), a subsidiary of BCB Holdings. BCB Bank had filed a treaty arbitration against the GOB in 2010, but the GOB filed a claim in Belize Supreme Court seeking a declaration that the Belize Supreme Court was the proper forum for addressing a dispute between the parties. *See id.* ¶¶ 39–40. In so doing, the GOB obtained an anti-arbitration injunction against BCB Bank that restrained BCB Bank from pursuing the arbitration outside of Belize. *See id.* ¶ 40. This injunction was only discharged by the CCJ in 2013. *See id.* ¶¶ 51–52. The GOB did not

request or obtain a similar injunction against BCB Holdings or BBL.

Petitioners filed this action on July 1, 2014, to confirm the arbitral Award pursuant to Section 207 of the Federal Arbitration Act ("FAA"), convert the Award plus costs and interests to United States dollars, and enter judgment in favor of petitioners. In the alternative, petitioners filed a complaint to recognize and enforce a foreign money judgment (U.K.Judgment) pursuant to the District of Columbia Foreign–Money Judgments Recognition Act of 2011, D.C.Code § 15–361 et seq.

The GOB timely filed a motion to dismiss the petition and motion to dismiss or strike the complaint. In addition, the GOB also submitted a response to the petition. In these two filings, the GOB lodges a series of arguments why this Court should not confirm the arbitral award or enforce the U.K. judgment. Namely, the Settlement Deed containing the arbitration clause is invalid; enforcement would violate the revenue rule; the Award is against U.S. public policy; the New York Convention does not apply to the dispute between the parties; the Court lacks subject-matter jurisdiction because Belize is entitled to foreign sovereign immunity; the Court lacks personal jurisdiction; the petition is time barred; the doctrines of res judicata, collateral estoppel, or international comity preclude enforcement of the Award; and there is a more convenient alternative forum. See Resp. to Pet. at 1; Mot. at 1. In addition, the GOB urges the Court to dismiss the complaint to recognize the U.K. Judgment because it was improperly joined with this confirmation action, the Court lacks subject matter and personal jurisdiction, res judicata and international comity must be applied, the foreign judgment is against public policy, and it conflicts with the final CCJ judg-ment. See Mot. at 2. Petitioners oppose all of these arguments. See Pet'r Opp. to Mot. (Mar. 2, 2015), Docket No. [29]; Opp. to Resp. to Pet. (Mar. 2, 2015), Docket No. [30].

## II. LEGAL BACKGROUND

■ United States federal courts have a robust history of enforcing arbitral awards. Indeed, the Supreme Court has recognized an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *see also* \*241 *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (noting that there is a "strong federal policy in favor of enforcing arbitration agreements.") In 1970, the United States acceded to the New York Convention. The New York Convention was implemented in the United States by amendment of the FAA. *See* Act of July 31, 1970, Pub.L. 91–368, 84 Stat. 692, codified at 9 U.S.C. §§ 201–208.

■ ■ This Court has jurisdiction to enforce an arbitral award against a foreign state pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330 *et seq* ("FSIA"). *See* 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."). It is undisputed that the GOB is a foreign state under 28 U.S.C. § 1603(a). Under the FSIA,

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States in any case—... in which the action is brought, either to enforce an agreement made by the foreign state

with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship . . . or to confirm an award made pursuant to such an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards.

28 U.S.C. § 1605(a), (a)(6), & (a)(6)(B). "The New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception." *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 121 (D.C.Cir.1999).

█ United States courts have little discretion to refuse to confirm an award under the FAA. The FAA provides that in exercising its original jurisdiction over enforcing international arbitral awards, the district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207. *See Yusuf Ahmed Alghanim & Sons, W.I.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2d Cir.1997) ("There is now considerable case law holding that, in an action to confirm an award rendered in, or under the law of, a foreign jurisdiction, the grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award."). The grounds for refusal enumerated in the Convention are as follows:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings . . . ; or

\*242 (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration . . . ; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties . . . ; or

(e) The award has not yet become binding, on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, art. V, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (ef-

fective for the United States on Dec. 29, 1970).

In its response to the petition to enforce the award and enter judgment, the GOB argues that the Court should refuse to enforce the award pursuant to Article V(1) (a), 2(a), and (2)(b) of the New York Convention. *See* Resp. to Pet. at 1. In its motion to dismiss, the GOB submitted numerous defenses to enforcing the Award, none of which fall within Article V of the New York Convention because, according to the GOB, the New York Convention does not apply because 1) the dispute between the parties was not commercial, and 2) Belize has not ratified the Convention. *See* Mot. at 16. Although, as discussed above, the Court may only refuse to enforce an award pursuant to Article V of the New York Convention, the Court will first take up the GOB's jurisdictional and other non-Article V arguments. It will then address the merits of the GOB's Article V arguments.

## III. DISCUSSION

A. Jurisdiction

 1. Applicability of the New York Convention

Petitioners rightly argue that the New York Convention governs the enforcement of the Award. *See* Pet'r Opp. to Mot. at 7–10. The New York Convention covers "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." N.Y. Convention, art. I(1). Pursuant to the framework set forth by the New York Convention, "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." *Id.* at art. III.

■ ■ ■ Under the FAA, arbitration agreements arising out of a legal relationship that are considered commercial fall under the New York Convention. *See* 9 U.S.C. § 202. This affirms the notion that the purpose of the New York Convention is "to 'encourage the recognition and enforcement of commercial arbitration agreements in international contracts.' " *Termo-Rio S.A. E.S.P. v. Electranta S.P.,* 487 F.3d 928, 933 (D.C.Cir.2007) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). The commercial relationship requirement, however, is construed broadly. *243 See Bautista v. Star Cruises,* 396 F.3d 1289, 1298 (11th Cir.2005) ("Congress meant for 'commercial' legal relationships to consist of contracts evidencing a commercial transaction ... *as well as* similar agreements.") The Settlement Deed resolved a previous dispute between the parties that arose from the GOB's purchase of shares of stock in Belize Telecommunications Limited from Carlisle Holdings Limited, the predecessor of BCB Holdings. *See* Opp. to Resp. to Pet. at 9. The Settlement Deed and included arbitration agreement "resolved the dispute between the parties relating to this purchase and sale of stock." *Id.* The underlying transaction was commercial, and the agreement to resolve the dispute arising out of this transaction facilitated the commercial legal relationship between the parties. Therefore, the Settlement Deed was indeed commercial for purposes of the FAA and the New York Convention.

■ In *Belize Soc. Dev. Ltd. v. Gov't of Belize*, the D.C. Circuit confronted nearly identical facts as those at hand. Specifically, the former Prime Minister of Belize executed an agreement with Belize Telemedia Limited on behalf of the GOB that included an agreement to submit any unresolvable disputes to arbitration under the

LCIA rules. *See* 668 F.3d 724, 728 (D.C.Cir.2012). In 2008, Belize's newly appointed Prime Minister declared that the contractual agreement and the included agreement to arbitrate were invalid, and the GOB declined to participate in the subsequent arbitration proceedings. *See id.* The arbitral tribunal issued a final award stating that it had jurisdiction over Telemedia's claim, that the agreement was valid, and that Telemedia was entitled to relief. *See id.* Subsequently, Telemedia filed a petition to enforce the award in the District Court for the District of Columbia, and on appeal of an Order to Stay, the D.C. Circuit analyzed the claims within the framework of the New York Convention. *See id.* at 727. "The fact that Belize is not a party to the New York Convention is irrelevant. If the place of the award is 'in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration.'" *Id.* at 731 n. 3 (quoting *Creighton,* 181 F.3d at 121). Similarly, the arbitral tribunal in the case at bar issued the Award in England and petitioners seek enforcement of it in the United States. Both the United States and England are parties to the New York Convention, and thus, the New York Convention applies.

### 2. Subject-matter jurisdiction

The GOB also argues that this Court does not have subject matter jurisdiction. The GOB argues that the FSIA exception to sovereign immunity for arbitration governed by an international treaty does not apply, and the former Prime Minister lacked authority to enter into the initial agreement with BCB Holdings, and consequently, Belize did not agree to arbitrate. *See* Mot. at 21. The Court is satisfied that

it has subject matter jurisdiction in this matter.

"The FSIA confers upon district courts subject matter jurisdiction as to 'any claim for relief in personam with respect to which the foreign state is not entitled to immunity.'" *TMR Energy Ltd. v. State Prop. Fund of Ukraine,* 411 F.3d 296, 324 (D.C.Cir.2005) (quoting 28 U.S.C. § 1330(a)); *see also, Practical Concepts, Inc. v. Republic of Bolivia,* 811 F.2d 1543, 1548 (D.C.Cir.1987) ("If an exception to the main rule of sovereign immunity applies, then the FSIA confers subject matter jurisdiction on the district courts."). The FSIA provides an exception to foreign *244 sovereign immunity for actions to confirm arbitration awards that are governed by an international treaty in force in the United States calling for the recognition and enforcement of arbitral awards. *See* 28 U.S.C. § 1605(a)(6)(B) (quoted above). Despite the GOB's arguments to the contrary, all of these requirements have been met.

The GOB argues that the arbitration exception to foreign sovereign immunity does not apply because the agreement to arbitrate is void *ab initio* because the former Prime Minister of Belize lacked actual authority to execute the Settlement Deed, including the arbitration clause. *See* Mot. at 22–23. However, the proposition that this Court must conduct a *de novo* review of the arbitrability of the dispute to find subject-matter jurisdiction "runs counter to the clear teaching of this Circuit on the purpose and role of the FSIA. The FSIA is a jurisdictional statute that 'speak[s] to the power of the court rather than to the rights and obligations of the parties.'" *Chevron Corp. v. Republic of Ecuador,* 949 F.Supp.2d 57, 63 (D.D.C. 2013) (quoting *Creighton,* 181 F.3d at 124). Inquiring into the merits of whether this dispute was rightly submitted to arbitra-

tion is beyond the scope of the FSIA's jurisdictional framework. *See id.* at 63–64 (reviewing case law and concluding that in assessing subject-matter jurisdiction, federal courts have examined only "whether the award was made pursuant to an appropriate arbitration agreement with a foreign state and whether the award 'is or may be' governed by a relevant recognition treaty.") Regardless, the Court considers the merits of the GOB's argument pursuant to Article V of the Convention in Section III(E)(1) of this opinion. However, as to the FSIA exception, the Court is satisfied that the FSIA's arbitration exception applies, and the Court has subject-matter jurisdiction to enforce the Award.

### 3. Personal Jurisdiction

■■ ■ The GOB also argues that this Court does not have personal jurisdiction over Belize because "[t]he minimum contacts requirements of Due Process cannot be satisfied as to GOB." Mot. at 32. The GOB asserts that "compelling reasons exist to safeguard sovereigns against the unfettered exercise of personal jurisdiction." *Id.* However, "foreign sovereigns and their extensively-controlled instrumentalities are not 'persons' under the Fifth Amendment's Due Process Clause—and thus have no right to assert a personal jurisdiction defense." *GSS Group Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 809 (D.C.Cir.2012) (citing *TMR Energy*, 411 F.3d at 300–01; *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96–97 (D.C.Cir. 2002)). The D.C. Circuit has held that the FSIA requirements suffice, and therefore, "subject matter jurisdiction plus service of process equals personal jurisdiction." *Practical Concepts*, 811 F.2d at 1548 n. 11 (quoting *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981)) (internal quotation marks omitted); *see also* FSIA 28 U.S.C.

§ 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."). The GOB has not contested proper service.

### B. Statute of Limitations

The FAA provides that "[w]ithin three years after an arbitral award falling under the Convention is made, any *245 party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207. The arbitral panel issued the award on August 18, 2009, and petitioners filed their petition for enforcement of the award on July 1, 2014. The GOB argues that the petition is time-barred by the FAA, and petitioners' right of action was not equitably tolled by the 2010 criminal statute. *See* Mot. at 8. The Court disagrees.

■■ ■ A "petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (internal quotation marks omitted). Petitioners have shown that they have been pursuing their rights to the arbitral award diligently since 2009. On August 21, 2009, petitioners sought enforcement of the award in Belize. They also brought their claim to the United Kingdom and received a foreign money judgment in 2013. In April 2010, petitioners joined in litigation challenging the constitutionality of the 2010 criminal statute. *See* Pet. ¶ 47; *see also* Pet'r Opp. to Mot.

at 14. Also, BCB Bank, a BCB Holdings subsidiary, appealed an injunction issued by the Belize Supreme Court that prevented it from resolving its arbitration claim outside of Belize. *See* Pet'r Opp. to Mot. at 14. The 2010 criminal statute was dismantled by the CCJ in January 2014, and petitioners initiated this action six months later in July 2014. Petitioners have diligently sought the enforcement and confirmation of the Award since it was issued in 2009 through both enforcement actions and litigation of the statute that created a risk of exposure to criminal penalties if petitioners had filed this action within the three-year limitations period.

Petitioners have also shown that they faced extraordinary circumstances that prevented them from timely filing an enforcement action. The mandatory criminal penalties in effect between 2010 and 2014 subjected petitioners and their attorneys to the risk of imprisonment and a substantial fine if they attempted to enforce the award in this or any other jurisdiction. Although these facts were described in detail in the petition, the GOB did not contest them in its motion. Instead, the GOB argues that petitioners slept on their rights because the criminal statute did not affect petitioners considering that the Belize Supreme Court had not issued an injunction specifically barring their recovery. *See* Mot. at 9. However, petitioners have demonstrated that the 2010 criminal statute had a "chilling effect" on seeking enforcement of the Award. *See* Pet. ¶ 29. And once this impediment to enforcement was lifted in 2014, petitioners immediately took advantage of the changed circumstances and filed this action.

Petitioners have satisfied the criteria for equitable tolling, and the period during which they were barred from pursuing their rights while the 2010 criminal statute was in effect is excluded from the limitations period. Thus, petitioners are not time-barred from seeking enforcement of the arbitral award.

### C. Effect of CCJ Decision

The GOB argues that the final judgment rendered by the CCJ prevents petitioners from attempting to enforce the Award in this jurisdiction. Specifically, the doctrines of *res judicata,* collateral estoppel, and international comity bar the Petition because a competent court, the CCJ, issued a final judgment refusing to enforce the Award. *See* Mot. at 10–15. These arguments are unavailing.

■ ■ *246 The New York Convention provides that "1. Recognition and enforcement of the award may be refused … if … (e) [t]he award … has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." N.Y. Convention, art. V(1) (e). The country under which an award was made is considered the primary jurisdiction whilst other member-countries to the New York Convention are designated as secondary jurisdictions. Secondary jurisdictions may refuse to enforce an award, but these decisions do not preclude other jurisdictions from enforcing it. By contrast, only a primary jurisdiction may set aside an award. *See Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,* 335 F.3d 357, 364 (5th Cir. 2003) ("Under the Convention, 'the country in which, or under the [arbitration] law of which, [an] award was made' is said to have *primary* jurisdiction over the arbitration award. All other signatory States are *secondary* jurisdictions, in which parties can only contest whether that State should enforce the arbitral award.") Thus, the GOB must show that Belize is a country under the law of which the award was

made in order to succeed on its argument that the CCJ decision to refuse enforcement of the award precludes this Court from granting the petition.

█ The GOB cannot make such a showing. The Settlement Deed provides that any disputes that cannot be resolved by the parties shall be referred to and resolved by "arbitration under the London Court of International Arbitration (LCIA) Rules which Rules are deemed to be incorporated by reference under this clause." Award ¶ 20 (quoting Settlement Deed); *see also* Settlement Deed at 11.2. "The phrase 'under the law of which' in Article V(1)(e) ... refers to the procedural law governing the arbitration." *Belize Soc. Dev. Ltd.*, 668 F.3d at 731 (citing *Karaha Bodas v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 289 (5th Cir.2004)). Because the arbitration was conducted in England under English arbitral laws, England is the country with primary jurisdiction. *See, e.g., Steel Corp. of the Philippines v. Int'l Steel Servs., Inc.*, 354 Fed.Appx. 689, 692 (3d Cir.2009) (concluding that Singapore is the country with primary jurisdiction because the arbitrator applied Singapore procedural law in reaching the award). As England is the country with primary jurisdiction, only an English court may set aside the arbitral award issued by the LCIA. Consequently, although the CCJ decided not to enforce the award, its decision to do so does not hold preclusive effect on this Court.

### D. Forum Non Conveniens

█ █ █ The GOB also argues that dismissal is warranted on *forum non conveniens* grounds. *See* Mot. at 36. Under this doctrine, the Court "must decide (1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a balancing of private and public interest factors strongly favors dismissal." *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 934, 950 (D.C.Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The GOB cannot satisfy the first step of the *forum non conveniens* test: "only a court of the United States (or of one of them) may attach the commercial property of a foreign nation located in the United States." *TMR Energy*, 411 F.3d at 303. The GOB argues that the D.C. Circuit's holding in *TMR Energy* is no longer good law because of the Supreme Court's holding in *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.* that "[a] federal court has discretion *247 to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case.' " 549 U.S. 422, 429, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). However, these two cases are not in conflict. In *Sinochem*, the Supreme Court held that courts may dismiss a case on *forum non conveniens* considerations before definitively determining jurisdiction when such an inquiry is burdensome. 549 U.S. at 436, 127 S.Ct. 1184. By contrast, in *TMR Energy*, the Court did not address the timing of assessing the appropriateness of the forum, but rather, the D.C. Circuit plainly stated that there is no alternative forum that has jurisdiction to attach the commercial property of a foreign nation located in the United States. 411 F.3d 296 at 303. Thus, *TMR Energy* controls the specific *forum non conveniens* question before the Court. The GOB cannot show that an alternative forum exists, so the Court need not engage in the balancing step of the *forum non conveniens* test. *TMR Energy*, 411 F.3d at 303 ("The district court need not weigh any factors favoring dismissal ... if no other forum to which the plaintiff may repair can grant the relief it may obtain in the forum it chose.").

*E. New York Convention*

As discussed above, courts "may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." *TermoRio*, 487 F.3d at 935 (quoting *Yusuf Ahmed Alghanim*, 126 F.3d at 23) (internal quotation marks omitted). Because "the New York Convention provides only several narrow circumstances when a court may deny confirmation of an arbitral award, confirmation proceedings are generally summary in nature." *Int'l Trading and Indus. Inv. Co. v. DynCorp Aerospace Technology*, 763 F.Supp.2d 12, 20 (D.D.C.2011). "[T]he burden of establishing the requisite factual predicate to deny confirmation of an arbitral award rests with the party resisting confirmation," and "the showing required to avoid summary confirmation is high." *Id.* (quoting *Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 336 (5th Cir.1976); *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987)) (internal quotation marks omitted).

The GOB has brought three defenses under Article V to the New York Convention against the enforcement of the Award. For the reasons stated below, the GOB cannot meet its burden under Article V.

### 1. Article V(1)(a)—Validity of the Agreement

The GOB argues enforcement of the Award should be refused pursuant to Article V(1)(a). Specifically, the GOB argues that the Settlement Deed was not valid under Belizean law because the former Prime Minister did not have actual authority to agree to it. *See* Resp. to Pet. at 13–15. As a result, the GOB was not a party to the contract and was not able to agree to arbitrate any disputes thereto. *See id.* at 15. The GOB has not challenged the validity of the arbitration agreement itself beyond the assertion that the arbitration

provision is part of the allegedly invalid contract.

The GOB relies on *China Minmetals Materials Import and Export Co., Ltd. v. Chi Mei Corp.*, 334 F.3d 274 (3d Cir.2003) for the proposition that this Court must review the validity of the contract as a whole. *See* Resp. to Pet. at 13–14. In *China Minmetals*, the party resisting enforcement of the arbitral award claimed the contract containing the arbitration clause had been forged, so the parties had never agreed to arbitrate. *See* 334 F.3d at 277. Without issuing a written opinion, the district court enforced the arbitral award. The Third Circuit framed the *248 question before it as "whether a foreign arbitration award might be enforceable regardless of the validity of the arbitration clause on which the foreign body rested its jurisdiction." *Id.* at 279. Applying the rule articulated in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) to the international arbitration context, the court stated that the common principles in arbitration decisions "suggest that the district court here had an obligation to determine independently the existence of an agreement to arbitrate even though an arbitration panel in a foreign state already had rendered an award." *Id.* at 284; *see First Options*, 514 U.S. at 944, 115 S.Ct. 1920 ("If . . . the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently.").

Applying the facts before the Court, this reasoning is consistent with that in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), in which the Supreme Court "distinguished between '[t]he issue of the contract's validity,' which is *not* for the court

to resolve, and 'the issue [of] whether any agreement between the alleged obligor and obligee was ever concluded,' which the courts might be allowed to consider." *Belize Soc. Dev. Ltd. v. Gov. of Belize*, 5 F.Supp.3d 25, 39 n. 22 (D.D.C.2013) (analyzing *China Minmetals* and quoting *Buckeye*, 546 U.S. at 444, 126 S.Ct. 1204). Unlike the respondent in *China Minmetals*, the GOB does not argue that the arbitration clause of the Settlement Deed was independently invalid and also failed to raise its argument that the contract was void *ab initio* before the arbitral panel. *See* Mot. at 5 (admitting the GOB chose "not to participate in the arbitration").

 The GOB's insistence that it did not agree to arbitrate because the contract is invalid is also inconsistent with the language of the New York Convention. Article V(1)(a) provides that an arbitral award may be refused only if the party that is challenging enforcement furnishes to the competent authority proof that "[t]he parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected to it ..." N.Y. Convention, art. V(1)(a). The agreement referred to in Article II of the Convention is "an agreement in writing under which the parties undertake to submit to arbitration all or any differences.... The term

'agreement in writing' shall include an arbitral clause in a contract." *Id.* at art. II. Therefore, a challenge brought under Article V(1)(a) must be brought against the agreement to arbitrate, not against the contract as a whole. *See* Restatement (Third) of Int'l Comm. Arb. § 4–12 cmt. e. (Draft No. 3, 2011) (Under Article V(1)(a), "courts do not review the arbitral tribunal's rulings on challenges to the validity of the contract as a whole, such as a claim that a contract including an arbitration clause was fraudulently induced or is illegal."); *see also Nanosolutions, LLC v. Prajza*, 793 F.Supp.2d 46, 54–55 (D.D.C. 2011) ("[T]he FAA prohibits a district court from considering ... challenges [to] the contract as a whole.").

 The LCIA arbitral panel examined the question of the legality of the contract in assessing its jurisdiction and concluded that "the widely accepted doctrine of the separability of the arbitration clause contained in a contract would preserve the validity of the arbitration clause in the Settlement Deed as Amended and the jurisdiction of this Tribunal in this *249 case." Award at ¶ 62.[6] Contrary to the GOB's assertion that the arbitration clause cannot be severed from the contract in this manner (*see* Mot. at 28), it is settled law that "an arbitration provision is severable from the remainder of the contract." *Buckeye*, 546 U.S. at 445, 126 S.Ct. 1204 (holding that an arbitrator should consider claims that a contract containing an arbitration provision is void for illegality).[7]

---

6. The CCJ judgment also found that the arbitration agreement was enforceable. *See BCB Holdings Ltd, et al., v. Attorney 6 General of Belize*, CCJ Appeal No. CV 7 of 2012, ¶ 55 ("The agreement to arbitrate was a free standing agreement separable from the remainder of the Deed.").

7. The GOB argues that the severability rule is inapplicable because it pertains to the FAA and not to the FSIA. *See* Mot. 7 at 26–28. As explained above, the Court is not required to conduct a de novo review of the arbitrability

of the dispute to satisfy the jurisdictional requirements of the FSIA. *See infra* at Section III(A)(2). Indeed, the Court's analysis of the arbitrability of the dispute is confined to the GOB's Article V defense. Thus, principles available under the FAA, which incorporates the New York Convention, are available to the Court. *See, e.g., General Elec. Co. v. Deutz AG*, 270 F.3d 144, 155 (3d Cir.2001) ("We recognize that First Options is a domestic arbitration case, but the international nature of the

Again, the GOB has not provided any proof to the Court that the provision in which the parties agreed to arbitrate is invalid under Belizean law, so the GOB's challenge under Article V(1)(a) fails.

### 2. Article V(2)(a)—Appropriateness of Arbitration

The GOB also claims that this Court should deny confirmation of the revenue rule which precludes U.S. courts from adjudicating foreign tax liabilities. *See* Resp. to Pet. at 16. Article V(2)(a) of the New York Convention allows courts to refuse to enforce an award when "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country." N.Y. Convention, art. V(2)(a). "The revenue rule is a long-standing common law rule that prevents the courts of one sovereign from enforcing or adjudicating tax claims from another sovereign." *Rep. of Honduras v. Philip Morris Co., Inc.*, 341 F.3d 1253, 1256 (11th Cir.2003). In cases in which the revenue rule has been applied, "[t]he main object of the action . . . was the collection of money that would pay foreign tax claims." *Pasquantino v. U.S.*, 544 U.S. 349, 364, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005). In *Pasquantino*, the Supreme Court articulated the link between the revenue rule and the rule against foreign penal enforcement, analyzing the "analogy between foreign revenue laws and penal laws." *See id.* at 361, 125 S.Ct. 1766.

No such link is present in the instant case. Petitioners did not bring their claim to the arbitral tribunal in an attempt to enforce Belize's tax laws. Indeed, the LCIA determined that the revenue rule did not apply because this is a contract case, not an action to enforce Belizean tax laws. *See* Award ¶ 180. The crux of the

present litigation does not affect the applica-

dispute was contract enforcement rather than the enforcement of a foreign revenue law. *See* Opp. to Resp. to Pet. at 27 (explaining the dispute arose out of an alleged breach of warranties contained in the Settlement Deed). Thus, the subject matter arbitrated was contemplated by the parties and capable of settlement by arbitration.

### 3. Article V(2)(b)—Public Policy

Lastly, the GOB argues that confirmation of the Award should be denied because the Award violates the public policy of the United States against government *250 corruption. *See* Resp. to Pet. at 17. "The public-policy exception under the New York Convention is ˊconstrued extremely narrowly and applied 'only where enforcement would violate the forum state's most basic notions of morality and justice.' " *Chevron Corp.*, 949 F.Supp.2d at 69 (D.D.C.2013) (quoting *Parsons v. Whittemore Overseas Co., Inc. v. Societe Generale De L'Industrie Du Papier (RAKTA)*, 508 F.2d 969, 974 (2d Cir. 1974)); *see also TermoRio S.A. E.S.P.*, 487 F.3d at 938 (quoting *Karaha Bodas*, 364 F.3d at 305–06). "Although this defense is frequently raised, it 'has rarely been successful.' " *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Systems, Inc.*, 665 F.3d 1091, 1097 (9th Cir.2011) (quoting Andrew M. Campbell, *Refusal to Enforce Foreign Arbitration Awards on Public Policy* Grounds, 144 A.L.R. Fed. 481 (1998) (collecting cases)). Establishing a countervailing public policy that weighs against enforcement of an arbitral award is a "substantial" burden and requires the moving party to "demonstrate a countervailing public policy sufficient to overcome [the] strong policy favoring confirmation." *Id.* at 1098. "Such a public policy . . . must be well defined and dominant, and is to be

tion of *First Options'* principles.").

ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Broth. of Carpenters and Joiners of America, AFL–CIO v. Operative Plasterers' & Cement Masons' Int'l Ass'n of U.S. & Can., AFL–CIO*, 721 F.3d 678, 697 (D.C.Cir.2013) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Linoleum & Plastic Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)) (internal quotation marks omitted); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 190 F.Supp.2d 936, 955 (S.D.Tex.2001). *See also Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1445 (11th Cir. 1998).

▆ The GOB relies on a broad policy statement, arguing that "[j]ustice and U.S. public policy against corruption will not be served by allowing this corrupt agreement and tainted Award to burden the people of Belize." Resp. to Pet. at 18. In so doing, the GOB does not identify an explicit or well-defined U.S. public policy that, if violated, would offend the most basic notions of morality and justice. Although this Court recognizes that "the United States has a strong public policy against corruption abroad," this policy does not reach the threshold required to outweigh the policy in favor of enforcement. *Belize Soc. Dev. Ltd.*, 5 F.Supp.3d at 43 ("U.S. courts have enforced arbitral awards in the face of public policy interests *at least* as weighty as the policy against corruption abroad."). Indeed, the GOB cannot point to any cases in which a court declined to enforce an arbitral award because it violated the United States' public policy against government corruption. Additionally, the general public policy the GOB relies upon implicates the politics of a foreign nation. Article V(2)(b) "was not meant to enshrine the vagaries of international politics under the rubric of 'public policy.'" *Parsons*, 508 F.2d at 974. Refusal to enforce the Award on the public-policy grounds suggested by the GOB would undoubtedly implicate politics abroad. The Court declines to do so. The GOB has not met the substantial burden of proving its public-policy defense.

### F. The Award

▆ Conversion of foreign currency into dollars at judgment "is the norm, rather than the exception." *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F.Supp.2d 153, 158 (D.D.C.2013), *aff'd*, *251 603 Fed.Appx. 1 (D.C.Cir. 2015). The monetary relief in the Award shall be converted into U.S. dollars as of August 18, 2009, the date of the Award, and the judgment will be entered in U.S. dollars. The Court also has discretion to award prejudgment interest and will exercise that discretion because doing so is "consistent with the underlying arbitration award." *Cont'l Transfert*, 932 F.Supp.2d at 164 (internal quotation marks omitted). *See also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran*, 665 F.3d at 1103 ("[F]ederal law allows a district court to award post-award, prejudgment interest in actions under the New York Convention."); *Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.*, 737 F.2d 150, 153–54 (2d Cir.1984); *Indus. Risk Insurers*, 141 F.3d at 1445. The arbitral tribunal awarded petitioners pre- and post-judgment interest at an annual rate of 3.38% compounded annually. Award ¶ 149. The Court accepts this determination and awards petitioners interest consistent with the Award calculated from the date the Award, August 18, 2009, to this date. The parties are ordered to submit to the Court proposed judgment amounts calculated with the conversions and interest consistent with this opinion.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT the Petition to Confirm Foreign Arbitration Award; convert the monetary relief in the Award into U.S. dollars; and award prejudgment interest. The complaint in the alternative is dismissed as moot. Likewise, the motion to dismiss is DENIED as moot. An appropriate Order accompanies this Memorandum Opinion.

**All Citations**

110 F.Supp.3d 233

650 Fed.Appx. 17

This case was not selected for publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. D.C.Cir. Rule 32.1 and Rule 36. United States Court of Appeals, District of Columbia Circuit.

BCB Holdings Limited and Belize Bank Limited, Appellees

v.

Government of Belize, Appellant.

No. 15–7063

Consolidated with 15–7069

September Term, 2015

Filed On: May 13, 2016

**Synopsis**

**Background:** Belize-registered parent holding company and its banking subsidiary petitioned to confirm foreign arbitral award, pursuant to Federal Arbitration Act (FAA) and Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York Convention), to convert award plus costs and interests to United States dollars, and to enter judgment in their favor against Government of Belize or, alternatively, filed complaint to recognize and enforce foreign money judgment pursuant to District of Columbia Foreign–Money Judgments Recognition Act. Belize moved to dismiss petition and complaint. The United States District Court for the District of Columbia, Colleen Kollar–Kotelly, J., 110 F.Supp.3d 233, granted petition and denied motion. Belize appealed.

**Holdings:** The Court of Appeals held that:

[1] the doctrine of international comity was not a "rule of procedure" of the United States, and so did not constitute a basis for denying enforcement of the foreign arbitral award under the New York Convention;

[2] Belize failed to show that enforcement of foreign arbitral award would violate the most basic U.S. notions of morality and justice; and

[3] equitable tolling of the statute of limitations for bringing suit to enforce arbitral award was appropriate.

Affirmed.

*18 Appeals from the United States District Court for the District of Columbia (No. 1:14–cv–01123)

**Attorneys and Law Firms**

Louis Benjamin Kimmelman, Esquire, Attorney, Dana Chandler MacGrath, Counsel, Sidley Austin LLP, New York, NY, Kristin Graham Koehler, Ryan Conway Morris, Esquire, Sidley Austin LLP, Washington, DC, for Petitioners–Appellees.

Juan C. Basombrio, Dorsey & Whitney LLP, Costa Mesa, CA, Creighton Reid Magid, Esquire, Dorsey & Whitney LLP, Washington, DC, for Respondent–Appellant.

Before: Rogers, Griffith, and Kavanaugh, Circuit Judges.

### *JUDGMENT*

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED** and **ADJUDGED** that the judgment of the District Court is hereby **AFFIRMED.**

BCB Holdings Limited and Belize Bank Limited are two Belizean banking companies. In 2005, those two companies signed an agreement with the Belizean Prime Minister regarding, among other things, their tax treatment. In 2008, the Government of Belize repudiated that agreement. In response, BCB Holdings and Belize Bank invoked the agreement's arbitration clause. On August 20, 2009, an arbitral tribunal in London ruled against Belize and ordered the country to pay a substantial amount (approximately $20.5 million in U.S. dollars), plus interest and costs. The two companies first tried to enforce the award in Belize itself. But that effort failed because Belize's highest court ruled that the award contravened Belize's separation-of-powers system. So on July 1, 2014, BCB Holdings and Belize Bank sought to enforce the award in the U.S. District Court for the District of Columbia. Belize moved to dismiss the suit on a variety of grounds, including international comity, public policy, forum non conveniens, and the statute of limitations. The District Court found none of Belize's arguments persuasive, and it enforced the arbitral award. *See BCB Holdings Ltd. v. Belize*, 110 F.Supp.3d 233 (D.D.C. 2015).

We affirm. Under the Federal Arbitration Act, U.S. courts must enforce foreign arbitral awards unless they find "one of the grounds for refusal or deferral of recognition or enforcement of the award specified in" the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (1958), also known as the New York Convention. 9 U.S.C § 207. In this case, Belize asks us to deny enforcement on the basis of international comity. Belize argues that the Convention instructs courts to *19 enforce arbitral awards "in accordance with the rules of procedure of the territory" where the enforcement action is brought. New York Convention art. III. But Belize has failed to provide support for its assertion that the doctrine of international comity is a "rule of procedure" of the United States.

Belize also claims that the District Court should have refused to enforce the arbitral award because it was the result of a corrupt bargain between the two companies and the former Belizean Prime Minister. Under the New York Convention, courts may decline to enforce an arbitral award if "enforcement of the award would be contrary to the public policy of that country." New York Convention art. V(2)(b). But courts should rely on the public policy exception only "in clear-cut cases" where "enforcement would violate the forum state's most basic notions of morality and justice." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (citations omitted). In this case, Belize has not shown that enforcement would violate the most basic U.S. notions of morality and justice. The arbitral tribunal did not find any corruption. And Belize's highest court refused to enforce the award not because the underlying agreement was tainted by corruption, but rather because the agreement violated Belize's separation of powers. Belize has failed to justify the use of the public policy exception in this case. Belize also argues

that the District Court should have refused to enforce the arbitral award based on two other public policies: the separation of powers and international comity. But enforcement in this case would not violate any "basic notion of morality and justice" rooted in either of those two doctrines.

Belize contends that the District Court should have dismissed the enforcement action on forum non conveniens grounds. That argument is squarely foreclosed by our precedent. In *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), we held that the doctrine of forum non conveniens does not apply to actions in the United States to enforce arbitral awards against foreign nations. *See id.* at 303–04.

Finally, Belize claims that BCB Holdings and Belize Bank were time-barred from bringing their enforcement action. Generally, parties must bring suit to enforce an arbitral award within "three years after [it] is made." 9 U.S.C. § 207. Here, BCB Holdings and Belize Bank took almost five years. But the District Court equitably tolled the statute of limitations so that their claims were not time-barred. *BCB Holdings Ltd.*, 110 F.Supp.3d at 245. The District Court reasoned that BCB Holdings and Belize Bank had pursued their rights to the arbitral award diligently. *Id.* According to the District Court, the two companies had failed to enforce the award only because of an external obstacle—a 2010 Belize criminal statute that, as relevant here, imposed imprisonment and substantial fines on those who violated a Belize Supreme Court injunction, including injunctions against pursuing enforcement of arbitration awards against Belize. *Cf. Belize Social Development Ltd. v. Belize*, 668 F.3d 724, 729 (D.C. Cir. 2012). That statute was ruled unconstitutional in January 2014. But up until that point, the District Court observed, the statute had a "chilling effect" on enforcement efforts. *BCB Holdings Ltd.*, 110 F.Supp.3d at 245. This Court has not resolved the appropriate standard of appellate review for equitable tolling decisions. But even under de novo review, we agree with the District Court that equitable tolling was appropriate under all the circumstances here. The companies persuasively explain that they *20 and their lawyers were reasonably chilled from enforcing the award in the United States because they might thereby run afoul of the Belizean statute and risk criminal penalties. So long as the statute was in effect, therefore, it was reasonable for BCB Holdings and Belize Bank to avoid any action—including starting an enforcement suit in the United States. And once the statute was ruled unconstitutional, it was reasonable for BCB Holdings and Belize Bank to then file the enforcement action in the District Court within six months.

We have carefully considered all of Belize's arguments. We affirm the judgment of the District Court.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**All Citations**

650 Fed.Appx. 17